2008 WY 68

**Stephen R. WINSHIP, Appellant (Defendant),**

v.

**GEM CITY BONE & JOINT, P.C., Appellee (Plaintiff).**

No. S–07–0246.

Supreme Court of Wyoming.

June 19, 2008.

Representing Appellant: Mark W. Gifford, Casper, Wyoming.

Representing Appellee: C.M. Aron of Aron and Hennig, LLP, Laramie, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] This case presents the issue of whether an attorney, who distributes the proceeds of a personal injury action without paying a medical provider's bills after his client executed, with the attorney's knowledge, an assignment of the proceeds to the provider, is liable to the medical provider for the amount of those bills. We conclude that the attorney is responsible to the medical provider for failing to honor his client's assignment and, consequently, affirm.

## ISSUE

[¶ 2] Attorney Stephen Winship presents the following issue on appeal:

Whether the district court erred in ruling that, as a matter of law, the terms of the *Authorization to Release Medical Records and Consent to Lien* obligated Appellant to directly pay Appellee the amount of outstanding medical charges from his client's settlement proceeds.

Although worded differently, Gem City Bone and Joint, P.C.'s (Gem City) statement of the issue is similar.

## FACTS

[¶ 3] Brand Jackman retained Mr. Winship to represent him in a personal injury action against Wyoming Technical Institute (WTI). Gem City provided treatment for his injuries, and Mr. Winship requested Mr. Jackman's medical records. Gem City provided a release form to Mr. Winship which stated in relevant part:

AUTHORIZATION TO RELEASE
MEDICAL RECORDS AND
CONSENT TO LIEN

TO: Gem City Bone and Joint, P.C.
    1909 Vista Drive
    Laramie, WY 82070

I, the undersigned, hereby authorize *Stephen R. Winship,* my attorney (or any attorney/employee of said law firm), to receive and copy any and all of my medical, hospital, mental, and psychological records in your possession, including a statement of all bills, paid or unpaid. I waive any privilege to my attorneys. Please do not release any information to insurance adjusters or other unauthorized individuals.

I further grant to Gem City Bone and Joint, P.C. a lien upon any and all claims of liability or indemnity for damages accruing to me for all outstanding charges for treatment and care on account of injuries giving rise to such claims and which necessitated such services, and I hereby authorize my attorney to pay, directly to Gem City Bone and Joint, P.C., all outstanding medical bills from any and all monies obligated to be paid to me by reason of any claims of liability or indemnity for damages accruing to me on account of injuries giving rise to such claims and which necessitated such services.

Mr. Winship signed the document in the space labeled: "ATTORNEY'S SIGNATURE" and forwarded it to Mr. Jackman. Mr. Jackman did not send the document back to Mr. Winship, but signed it on January 27, 2000, and sent it directly to Gem City. Gem City then sent the medical records to Mr. Winship. In addition, Gem City continued to treat Mr. Jackman, resulting in increased medical bills.

[¶ 4] Jeremy Michaels, another attorney, became involved in the personal injury litigation representing Mr. Jackman. Mr. Michaels negotiated a settlement of Mr. Jackman's claims with WTI and prepared a statement of distribution of the proceeds of the settlement. The statement, which was

signed by Mr. Jackman on October 28, 2002, indicated that the proceeds were distributed to Mr. Jackman, another member of his family and his attorneys. The statement also stated: "CLIENT IS SOLELY RESPONSIBLE FOR PAYMENT OF ALL MEDICAL BILLS/LIENS, KNOWN AND UNKNOWN." Mr. Jackman apparently did not pay Gem City.

[¶ 5] Gem City filed an action against Mr. Winship seeking payment of Mr. Jackman's medical bills. Gem City included claims for breach of contract, breach of obligation imposed by law, and *quantum meruit*. Mr. Winship filed a motion for summary judgment. On September 11, 2006, the district court issued a decision letter granting summary judgment in favor of Mr. Winship on Gem City's first two claims. The court denied Mr. Winship's summary judgment motion as to the *quantum meruit* claim.[1]

[¶ 6] Mr. Winship and Gem City filed cross motions for summary judgment on the remaining issues. The district court held a hearing on the motions and issued a decision letter on May 23, 2007. It granted summary judgment in favor of Mr. Winship on the *quantum meruit* claim. The district court, however, revisited its earlier summary judgment rulings:

> [T]his Court previously granted summary judgment as to Gem City's breach of contract and breach of obligation imposed by law claims. In conducting additional research for purposes of the currently pending motions for summary judgment, this Court became aware of a substantial body of case law that addresses the obligation of an attorney to comply with an assignment or lien executed by an attorney's client, particularly when that attorney knows of or participated in the assignment.

The district court stated, "the majority of courts that have addressed the issue have concluded that, when an attorney participates in or knows of an assignment of or lien against litigation proceeds, then the attorney is obligated to honor that assignment by paying the proceeds directly to the assignee." The court then ruled: "This [c]ourt is compelled to follow the persuasive path set by the majority of sister jurisdictions that have addressed the issue in concluding that, as a matter of law, Winship is liable to Gem City for the amount of the assignment."

[¶ 7] Mr. Winship filed a motion requesting an opportunity to brief the issue raised by the district court in its decision letter, and the district court granted it. However, after reviewing the parties' submissions, the district court issued an order affirming its decision letter of May 23, 2007, and entered a judgment in favor of Gem City in the amount of the outstanding medical bills. This appeal followed.

## SUMMARY JUDGMENT STANDARD

[¶ 8] Summary judgment motions are governed by W.R.C.P. 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

We review a district court's summary judgment rulings *de novo*, using the same materials and following the same standards as the district court. The facts are reviewed from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Sunshine Custom Paints & Body, Inc. v. South Douglas Highway Water & Sewer Dist.*, 2007 WY 206, ¶ 8, 173 P.3d 398, 401 (Wyo.2007); *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006).

## DISCUSSION

[¶ 9] Mr. Winship maintains that the district court erred as a matter of law when it

---

1. The district court found "it necessary to 'bifurcate' its discussion of those costs that were incurred as a result of medical treatment by Gem City versus those costs that were litigation-related expenses (such as expert witness fees)." The district court ruled that there was insufficient information about any litigation related expenses and, therefore, denied summary judgment as to that matter. The record was subsequently clarified to establish that Gem City was not claiming any litigation related expenses. Thus, that issue is not presented here.

ruled that he was responsible for failing to pay Gem City from the proceeds of Mr. Jackman's personal injury action. He argues, first, that he did not enter into a direct contractual obligation with Gem City to pay the charges out of the proceeds of the settlement. Mr. Winship asserts the district court properly interpreted the release in its September 11, 2006, decision letter, where it stated:

> The problem with Gem City's cause of action for breach of contract is that there was no "contract" between Winship and Gem City; rather, the contract is between Jackman and Gem City. The Release is written such that *Jackman* grants Gem City a lien and *Jackman* authorizes (but does not direct or require) his attorney to pay Gem City directly. Although Winship signed the Release, there is no language included therein requiring him to honor Jackman's agreement or even requiring him to pay Gem City directly.
>
> Looking at the plain language of the Release and focusing on a determination of the parties' intent, this [c]ourt cannot interpret the Release as *requiring* Winship to pay Jackman's medical obligations.

(emphasis in original; footnote and citation omitted). However, when the district court revisited the issue in its second decision letter, it focused on the law of assignments rather than whether, under the plain language of the release, Mr. Winship entered into a direct contractual obligation with Gem City.

[¶ 10] "An 'assignment' is a transfer of property or some other right from one person (the 'assignor') to another (the 'assignee'), which confers a complete and present right in the subject matter to the assignee." 6 Am.Jur.2d *Assignments* § 1 (2007) (footnotes omitted). *See also, Central Wyo. Med. Lab., LLC v. Med. Testing Lab., Inc.,* 2002 WY 47, ¶ 21, 43 P.3d 121, 129 (Wyo.2002). It is not difficult to effectuate an assignment of a right or claim.

> Any language, however informal, that indicates the intention of the owner of a claim or chose in action to transfer it, is sufficient to vest the property in the assignee; in determining whether an assignment has occurred, the courts look to substance, rather than the form.... An

assignment may be in the form of an agreement or order or any other instrument that the parties may see fit to use for that purpose.

6 Am.Jur.2d *Assignments* § 114 (2007). *See also,* 6A C.J.S. *Assignments* § 58 (2007).

[¶ 11] Assignments are contracts and, consequently, are interpreted in accordance with our typical rules of contract construction. *Central Wyo. Med. Lab.,* ¶ 21, 43 P.3d at 129. We interpret an unambiguous contract as a matter of law and in accordance with the ordinary and usual meaning of its terms. *See, Carlson v. Flocchini Invs.,* 2005 WY 19, ¶ 15, 106 P.3d 847, 854 (Wyo.2005).

[¶ 12] We agree with Mr. Winship that the plain language of the release does not, by itself, create a direct contract between him and Gem City. Nevertheless, as the district court recognized in its second decision letter, the proper question about the release is not whether it created a direct contractual relationship between Mr. Winship and Gem City but whether Mr. Jackman properly assigned the proceeds of his personal injury claim to Gem City. We must, therefore, look to the law of assignments and the rights and responsibilities created between the assignor, assignee and obligor or debtor to resolve the dispute between Mr. Winship and Gem City.

[¶ 13] Mr. Winship argues that many of the cases relied upon by the district court do not support a decision that an attorney should be liable for his client's medical bills. First, he emphasizes the fact that the release only *authorized* him to pay Mr. Jackman's medical bills rather than *directed* him to pay the bills. We are unsure whether Mr. Winship is contending that the release language was insufficient to create an assignment of the proceeds from Mr. Jackman to Gem City or whether he is arguing that the failure to use specific language directing him to pay the bills is important because he is an attorney and the assignor was his client. We conclude that either position is untenable.

[¶ 14] With regard to the first question, whether the language used in the release created a valid assignment, *Montgomery v. Locomotive Eng'rs' Mut. Life & Accident Ins. Ass'n,* 47 Wyo. 86, 31 P.2d 71

(Wyo.1934), offers some guidance. In that case, an insured assigned the proceeds from his life insurance policies with the defendant association to the locomotive engineers union to offset the costs of his stay in a home operated by the union. The assignment stated in relevant part:

> This is to authorize the officers of the Locomotive Engineers Mutual Life & Accident Insurance Association to deduct whatever amount has been expended by the Brotherhood of Locomotive Engineers towards my maintenance in the Highland Park Home upon the maturing of my insurance certificates No. 82801–2 in favor of the Brotherhood of Locomotive Engineers.
>
> This authority is given with the understanding that a reasonable amount will be left of my insurance to take care of my burial expenses, provided I leave no estate to take care of same.

*Id.* at 72. As is clear from the language of the assignment, the assignor (the insured) simply authorized the obligor (the association) to pay the amount due to the assignee (the union); it did not direct the obligor to do so. Although other issues were raised about the validity of the assignment in *Montgomery*, there was no argument that its wording did not create a valid assignment.

[¶ 15] The assignment language in the release at issue here is very similar to the language in *Montgomery*:

> I hereby authorize my attorney to pay, directly to Gem City Bone and Joint, P.C., all outstanding medical bills from any and all monies obligated to be paid to me by reason of any claims of liability or indemnity for damages accruing to me on account of injuries giving rise to such claims and which necessitated such services.

The release clearly indicated that Mr. Jackman, who was the owner of the claim, intended to transfer the proceeds to Gem City for payment of his medical bills. It makes no difference whether the language authorizes or directs the obligor to honor the assignment as long as it indicates that the assignor intended to transfer his right to the assignee. Applying the rule that we give effect to the ordinary meaning of the language of an assignment and the precedent set forth in *Montgomery*, we conclude the release effected a valid assignment of Mr. Jackman's settlement proceeds to Gem City for payment of his medical bills.

■ [¶ 16] The next question is whether additional or different wording is required to obligate an attorney to honor his client's assignment. As the district court indicated in its second decision letter, there are numerous cases in which courts have applied basic assignment principles to circumstances like those at bar. Those cases hold that an attorney must honor his client's assignment of the proceeds of his claim to a creditor. *See, e.g., Moore v. Weinberg,* 373 S.C. 209, 644 S.E.2d 740 (Ct.App.2007); *Berkowitz v. Haigood,* 256 N.J.Super. 342, 606 A.2d 1157 (1992); *Romero v. Earl,* 111 N.M. 789, 810 P.2d 808 (1991). In *Moore*, Wheeler was indebted to Moore pursuant to a note. In order to satisfy his debt, Wheeler assigned Moore an interest in his anticipated proceeds from pending litigation. Weinberg, who was Wheeler's attorney in the litigation, prepared the assignment document. The litigation settled and Weinberg distributed the funds to Wheeler, after taking his attorney's fee. Unfortunately, Mr. Weinberg "overlooked" the assignment. Moore initiated an action against Weinberg to recover under the assignment. *Id.* at 742–43. The South Carolina court of appeals ruled that Weinberg was required to comply with the assignment and, because he failed to do so, the assignee had a claim against him. *Id.* at 746–49. *See also, Hsu v. Parker,* 116 Ohio App.3d 629, 688 N.E.2d 1099, 1102 (1996).

[¶ 17] The facts in *Berkowitz* are very similar to those in the case at bar. The client was injured in an automobile accident and received medical treatment from Dr. Berkowitz. To secure payment of the medical bills, the client executed a document which stated that the doctor would wait for payment from insurance proceeds or from the funds received as a result of the client's pending personal injury litigation. Later, the client signed another document which "purported to create a lien against the proceeds of his personal injury action and directed and authorized his attorney to disburse the funds to the medical provider." *Berkowitz,* 606 A.2d at 1158. The client's attorney was notified of the documents. *Id.* at 1159.

The New Jersey Superior Court held that the client's assignment was effective and, because the attorney had notice of it, he was liable to the doctor for failing to honor it. *Id.* at 1159–60. *See also, Brinkman v. Moskowitz*, 38 Misc.2d 950, 238 N.Y.S.2d 876 (N.Y.Sup.Ct.1962).

[¶ 18] There are courts which have refused to honor such assignments. In *Quality Chiropractic, PC v. Farmers Ins. Co.*, 132 N.M. 518, 51 P.3d 1172, 1181–82 (Ct.App. 2002), the New Mexico Court of Appeals held that the common law rule against assignment of personal injury claims prohibited a medical provider from enforcing, against an attorney, an assignment signed by the attorney's client. The New Mexico Court of Appeal's reasoning in *Quality Chiropractic* is not applicable in Wyoming because we have expressly recognized the right to assign personal injury causes of action. *See, e.g., Northern Utilities Div. of KN Energy, Inc. v. Town of Evansville*, 822 P.2d 829, 837 (Wyo.1991). Moreover, in the case at bar, Mr. Jackman assigned the proceeds of his claim rather than the claim itself.

[¶ 19] In *Yorgan v. Durkin*, 290 Wis.2d 671, 715 N.W.2d 160, 162 (2006), the client signed a document purporting to assign part of the proceeds from his personal injury claim to his chiropractor. The attorney did not pay the chiropractor from the settlement proceeds, but the Wisconsin Supreme Court refused to hold the attorney responsible because the assignment specifically included a contingency indicating the attorney could refuse to comply with the terms of the assignment, in which case the patient would be required to pay the medical bills. *Id.* at 165. The court also refused to enforce the assignment on public policy grounds. *Id.* at 167–70. The case at bar is distinguishable from *Yorgan* because the language used in the release did not include a contingency that Mr. Winship could refuse to comply with the assignment.

[¶ 20] As we indicated earlier, Mr. Winship argues that many of the cases relied upon by the district court do not support a decision that he should be liable for his client's medical bills because the assignments in those cases specifically directed the attorney to pay the creditor, while Mr. Jackman simply authorized Mr. Winship to pay Gem City. He argues the specific direction to the attorneys was an important factor in holding the attorneys responsible.

[¶ 21] While the assignments in many of the cases Mr. Winship referred to do contain words specifically directing the attorney to pay the proceeds to the assignee, *see, e.g., Moore*, 644 S.E.2d at 746; *Hsu*, 688 N.E.2d at 1101–02, others do not. For example, in *Leon v. Martinez*, 84 N.Y.2d 83, 614 N.Y.S.2d 972, 638 N.E.2d 511, 512–14 (Ct. App.1994), a personal injury plaintiff signed a document that simply stated, "I give" a percentage of any recovery to certain persons. The New York Court of Appeals held that the document was sufficient to support a claim against an attorney for failing to pay settlement proceeds to the assignees. *Id.* We see no reason why the language effecting an assignment must be more definite or specifically direct the obligor to honor the assignment when the obligor is the assignor's attorney. Consequently, as long as the intention to transfer the claim or the proceeds thereof is clear, the assignment is effective.

[¶ 22] Moreover, payment of the settlement proceeds to a client's valid assignee does not violate an attorney's ethical obligations. When the settlement proceeds were distributed in 2002, Rule 1.15(c) of the Wyoming Rules of Professional Conduct for Attorneys at Law[2] stated in relevant part:

(c) Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

---

2. A substantially similar version of the rule is currently codified at Wyoming Rules of Professional Conduct for Attorneys at Law 1.15(e).

As the plain language of the rule states, the attorney is obligated to deliver to his client and third parties any funds they are entitled to receive. Thus, the rule does not require, or even allow, the attorney to pay funds belonging to a third party to his client. Comment 3 to Rule 1.15 specifically recognizes the possibility of "a client's creditors [having] just claims against funds or other property in a lawyer's custody."

[¶ 23] In *Leon*, the court interpreted a rule with similar language as requiring an attorney to distribute to the client only property that he is "entitled to receive." *Leon*, 614 N.Y.S.2d 972, 638 N.E.2d at 514. In *Bonanza Motors, Inc. v. Webb*, 104 Idaho 234, 657 P.2d 1102, 1105 (Ct.App.1983), the Idaho Court of Appeals interpreted a similar rule and stated: "In our view, the rule does not shield the law firm from responsibility for failing to transmit the assigned funds to the creditor-assignee." *See also, Moore*, 644 S.E.2d at 747–48. The *Berkowitz* court also held that, under the New Jersey rules of professional conduct, an attorney has an obligation to honor his client's assignment of the proceeds of pending litigation to a third party. *Berkowitz*, 606 A.2d at 1159–60. Like these courts, we believe that an attorney who holds funds for his client stands in the same position as any other obligor with respect to an assignment of those funds by his client to a creditor.

[¶ 24] As we explained earlier, the language used in the release clearly evidenced Mr. Jackman's intention to transfer his right to the proceeds of his personal injury action to Gem City for payment of his medical bills. We turn now to the question of what happens when an obligor/debtor fails to honor an assignment.

[¶ 25] The responsibility of the obligor/debtor to the assignee of a debt has been examined in treatises. 6 Am Jur.2d *Assignments* § 142 (2008) discusses the effect of the obligor's payment to the assignor after notice of an assignment:

> After a notice of an assignment has been given to the obligor, the assignor has no remaining power of release. Thus, if a

notice of the assignment has been given to the obligor, he or she must pay the assignee, and remains liable to the assignee if he or she pays the assignor instead.

(footnotes omitted). Similarly, 6A C.J.S. *Assignments* § 106 (2008) states, in relevant part:

> When there is a valid assignment in place, performance under a contract runs to the assignee. Thus, when a creditor assigns its interest in an existing debt owed to it, the debtor must generally pay the debt to the assignee, not the original creditor.
>
> . . . .
>
> [A]fter a debtor has received notice of a valid assignment, or obtained knowledge of it in any manner, a payment to the assignor or any person other than the assignee is at the debtor's peril and does not discharge him or her from liability to the assignee, and the debtor's settlement with and release by the assignor will not defeat the assigned right. . . .

(footnotes omitted). Many courts have applied these basic principles to hold an attorney, who has notice of the assignment, responsible for failing to honor his client's assignment to a third party. *See, e.g., Hsu*, 688 N.E.2d at 1102; *Berkowitz*, 606 A.2d at 1159–60; *Brinkman*, 238 N.Y.S.2d at 876; *Bonanza Motors*, 657 P.2d at 1104–05; *Romero*, 810 P.2d at 809.[3]

[¶ 26] Mr. Winship does not seriously argue that he did not have notice of the assignment. He signed the release document himself and sent it on to Mr. Jackman. Although Mr. Jackman did not return the executed document to Mr. Winship, he should have been aware that the release had been signed because he received the medical records. Thus, the district court properly held Mr. Winship responsible to Gem City and entered judgment against the attorney in the amount of Mr. Jackman's medical bills.

---

**3.** *See Stilson v. Hodges*, 934 P.2d 736 (Wyo. 1997), for a discussion of similar concepts in the context of insurance subrogation.

## CONCLUSION

[¶ 27]   Mr. Jackman clearly assigned his interest in the proceeds of his personal injury action to Gem City for payment of his medical bills.  As obligor, Mr. Winship was required to honor that assignment.  It is irrelevant that he had not entered into a direct contract with Gem City. Under the well-settled law of assignments, an obligor who has notice of an assignment and fails to honor it is responsible to the assignee.  The district court, therefore, properly held Mr. Winship was responsible to Gem City for Mr. Jackman's medical bills.[4]

[¶ 28]   Affirmed.

---

4.   We offer no opinion on whether Mr. Winship could  proceed  against  his  client  or  the  other attorney, Mr. Michaels, to recover the amounts owed to Gem City.