2009 WY 24

**The STATE of Wyoming, ex rel., Sandy ARNOLD, Appellant (Petitioner),**

v.

**Ron OMMEN, in his Official Capacity as Director of the Wyoming Department of Administration and Information, and Sandy Padilla, in her Official Capacity as Risk Manager, Appellees (Respondents).**

No. S–08–0091.

Supreme Court of Wyoming.

Feb. 24, 2009.

Representing Appellant: Ron Arnold, Cheyenne, Wyoming.

Representing Appellees: Bruce A. Salzburg, Wyoming Attorney General; Michael L. Hubbard, Deputy Attorney General; Ryan T. Schelhaas, Senior Assistant Attorney General; Elizabeth B. Lance, Assistant Attorney General. Argument by Ms. Lance.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] After her claim for medical benefits under the State Employees' and Officials' Group Plan (Group Plan) was denied, Sandy Arnold filed a grievance with the Employees' and Officials' Group Insurance Program (Group Insurance Program) section of the Wyoming Department of Administration and Information (A & I). The Office of Administrative Hearings (OAH) dismissed the grievance and Ms. Arnold presented the State Office of Risk Management with a notice of claim pursuant to the Wyoming Governmental Claims Act (WGCA) in which she asserted the State breached the insurance contract by failing to pay her claim.

[¶ 2] The risk manager forwarded the notice of claim to the Group Insurance Program. Ms. Arnold then filed a petition for writ of mandamus and complaint for declaratory judgment in district court seeking a writ requiring the risk manager to process her notice of claim and a declaration of her rights under the Group Plan. The district court granted summary judgment, and dismissed Ms. Arnold's claims. She appeals, claiming error in two respects: first, she claims she was entitled to issuance of a writ of mandamus requiring the risk manager to settle or deny her claim; second, she claims that she was entitled to a district court declaration of her rights under the Group Plan and under the WGCA. We affirm the district court's denial of a writ of mandamus. However, we conclude that Ms. Arnold was entitled to a declaration of her rights and, proceeding to declare her rights, we hold that she was required to complete the Group Plan appeals process before filing a legal action.

## ISSUES

[¶ 3] Ms. Arnold presents the following issues for our determination:

 1. Did Appellant's Verified Petition for Writ of Mandamus, affidavits and supporting documents present a justiciable controversy?

 2. Did Appellant's Complaint for Declaratory Judgment, affidavits and supporting documents present a justiciable controversy?

The State rephrases the issues as follows:

 I. Did the District Court properly grant Appellees' Converted Motion for Summary Judgment regarding Appellant's Petition for Writ of Mandamus, when Appellant has not cited to any Wyoming law which requires the State Risk Manager to assume jurisdiction and investigate her governmental claim?

 II. Did the District Court properly grant Appellees' Converted Motion for Summary Judgment regarding Appellant's Complaint for Declaratory Judgment, when Appellant seeks an advisory opinion in anticipation of future legal actions without a current justiciable controversy?

## FACTS

[¶ 4] Ms. Arnold is an employee of the State of Wyoming covered by the Group Plan. Ron Ommen was the director of A & I, which is responsible for administering and managing the state employees' group insurance program. Sandy Padilla is the manager of the risk management section of the general services division of A & I, and is responsible for administering the State Self–Insurance Program established in Wyo. Stat. Ann. §§ 1–41–101 through 1–41–111 (LexisNexis 2007).

[¶ 5] An understanding of the interplay between the State Self–Insurance Program and WGCA and between the Group Plan and the State Employees and Officials Group Insurance Act (Group Insurance Act) is necessary for resolution of the issues presented in this case. We begin with consideration of the State Self–Insurance Program and WGCA.

[¶ 6] In the 1980s the State was unable to procure affordable commercial liability insurance coverage for claims brought against it and its employees under the WGCA and federal law. The legislature passed the State Self–Insurance Program Act which established a self-insurance account to cover such claims. The WGCA requires that written notice of a liability claim against the State or its employees be presented to the general services division of A & I. Pursuant to § 1–41–105(a)(iii) of the State Self–Insurance Program Act, the risk manager is required to supervise and manage the investigation, adjustment and settlement of liability claims brought against the State and its employees under the WGCA.

[¶ 7] We next consider the interplay between the Group Plan and the Group Insurance Act, Wyo. Stat. Ann. §§ 9–3–201 through 9–3–210 (LexisNexis 2007). The health benefits provided to state employees under the Group Plan are self-funded by the State of Wyoming. Great–West contracts with the State to process claims and benefits under the Group Plan but does not insure or guarantee benefits. The Group Plan sets forth procedures for filing claims for health benefits and for contesting claims determinations. Additionally, in accordance with § 9–3–205 of the Group Insurance Act, A & I has adopted rules establishing procedures for hearing insured employee complaints concerning benefit claims.

[¶ 8] As authorized by § 9–3–209 of the Group Insurance Act, Ms. Arnold elected to have her dependent spouse covered under the Group Plan. He incurred healthcare consultation fees and drug prescription costs for which Ms. Arnold requested a determination of medical necessity and benefits under the Group Plan. Great–West's physician reviewer concluded there was "insufficient documentation of the underlying condition and proven benefits of treatment to establish that this treatment is medically necessary" and denied her request. In the denial letter, Great–West notified Ms. Arnold that she could appeal the determination.

[¶ 9] Ms. Arnold did not appeal. Instead, she filed a grievance with the Group Insur-

ance Program. The Group Insurance Program forwarded the grievance to the OAH. The OAH issued an order dismissing the grievance for lack of jurisdiction, concluding Ms. Arnold had failed to exhaust the Great–West appeals process before filing a grievance as required by the Group Plan.

[¶ 10] Ms. Arnold then presented a notice of claim to the risk manager under the WGCA, Wyo. Stat. Ann. § 1–39–101 through 1–39–121 (LexisNexis 2007), claiming the State, by and through Great–West, breached the Group Plan when it failed to pay her benefits claim. She sought $9,368.20 in damages. The risk management office responded with a letter notifying Ms. Arnold that the State Self–Insurance Program was not the proper venue for her claim and that it had forwarded her claim to the Group Plan Program.

[¶ 11] Ms. Arnold then filed her petition for writ of mandamus and complaint for declaratory relief in district court. She alleged that the risk manager was required to accept, investigate and act on her notice of claim in accordance with the WGCA. Instead, she asserted, the risk manager improperly treated her notice of claim as falling under the Wyoming Administrative Procedure Act (WAPA), Wyo. Stat. Ann. §§ 16–3–101 through 16–3–115 (LexisNexis 2007). She sought a writ of mandamus ordering the risk manager to accept and investigate her claim and settle or deny it. She also sought a declaration of her rights under the WGCA, the State Self–Insurance Program and the Group Plan.

[¶ 12] A & I's director and risk manager filed a motion to dismiss Ms. Arnold's petition and complaint, claiming that she had not exhausted available administrative remedies and was seeking an advisory opinion on her legal claims. They supplemented the motion with documents outside of the pleadings. After hearing argument on the motion, the district court converted it to one for summary judgment and entered an order granting the motion. The district court held that Ms. Arnold had failed to exhaust her administrative remedies; a declaratory judgment action will not lie to allow a court to prejudge issues that should be decided by an agency;

judicial involvement was premature and inappropriate until an administrative decision had been made; and a judicial declaration of Ms. Arnold's rights under the Group Plan was inappropriate because it would be an advisory opinion with no binding effect. Ms. Arnold appealed the district court's order to this Court.

### STANDARD OF REVIEW

[¶ 13] When this Court reviews a grant of summary judgment entered in response to a petition for declaratory judgment, we invoke our usual standard for review of summary judgments. *Goglio v. Star Valley Ranch Ass'n*, 2002 WY 94, ¶ 12, 48 P.3d 1072, 1076 (Wyo.2002). Summary judgment motions are governed by W.R.C.P. 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

We review a district court's summary judgment rulings *de novo*, using the same materials and following the same standards as the district court. *Winship v. Gem City Bone & Joint, P.C.*, 2008 WY 68, ¶ 8, 185 P.3d 1252, 1254 (Wyo.2008). The facts are reviewed from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id.*

[¶ 14] Interpretation of a statutory duty in the context of mandamus is a question of law, reviewed *de novo*, following the general rules of statutory construction. *State ex rel. Sublette County Bd. of County Comm'rs v. State (In re: Bd. of County Comm'rs)*, 2001 WY 91, ¶ 11, 33 P.3d 107, 111 (Wyo.2001). Whether or not to issue a writ of mandamus is left to the sound discretion of the trial court. *Id.*, ¶ 10, 33 P.3d at 112. An abuse of discretion occurs when the trial court could not reasonably conclude as it did. *Id.*

## DISCUSSION

### 1. Writ of Mandamus

[¶ 15] Ms. Arnold claims the district court erred in dismissing her petition for writ of mandamus because her notice of claim was facially valid, the risk manager was required to accept and process it, and her failure to do so created a justiciable controversy properly redressed by a writ of mandamus. A & I's director and risk manager contend the district court correctly dismissed the petition because it did not satisfy the requirements for issuance of a writ of mandamus. Specifically, they assert Ms. Arnold had an adequate remedy at law and the "duty" she sought to have the district court enforce was discretionary, not ministerial.

[¶ 16] "Mandamus is a writ issued in the name of the state to an inferior tribunal, a corporation, board or person commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station." Wyo. Stat. Ann. § 1–30–101 (LexisNexis 2007). The function of mandamus is to command performance of a ministerial duty which is plainly defined and required by law. *Sublette County*, ¶ 10, 33 P.3d at 111. Mandamus will not lie unless the duty is absolute, clear, and indisputable. *Id.* The law must not only authorize the demanded action but require it. *Id.* If the lower tribunal has the right to exercise discretion regarding an issue, mandamus is not an appropriate remedy. *Id.*

[¶ 17] We begin by reviewing the pertinent statutory provisions to determine whether the risk manager had a clear duty to perform a particular act upon receipt of Ms. Arnold's notice of claim. The following standards govern our review:

When construing statutes, we first review the language of the statute to determine whether it is ambiguous. If we find it to be unambiguous, we apply its plain meaning and do not consult the numerous rules of statutory construction. If, however, we find the statute ambiguous, that is "its meaning is uncertain, doubtful, or if a single term can fairly be said to mean different things," then we may resort to the rules of statutory construction.

*W.A.R.M. v. Bonds,* 866 P.2d 1291, 1294 (Wyo.1994).

[¶ 18] Section 1–39–115 of the WGCA provides in relevant part:

(a) Upon receipt of a claim against the state which is covered by insurance, the general services division of the department of administration and information shall send the claim to the insurance company insuring the risk involved for investigation, adjustment, settlement and payment.

. . . .

(d) Claims under this act which are not covered by insurance may be settled as provided by W.S. 1–41–106. . . .

As it pertains to this case, § 1–41–106 of the State Self–Insurance Program Act provides:

(a) Any claim covered under this act may be compromised or settled according to the requirements in subsection (b) of the section. . . .

(b) The following parties are authorized to make compromises or settlements of claims in the following amounts:

. . . .

(ii) The risk manager is authorized to settle claims for an amount not to exceed fifty thousand dollars ($50,000.00);

Section 1–41–105 of the same Act further provides that the risk manager shall "administer, supervise and manage the investigation and adjustment and settlement of claims covered by this act. . . ."

[¶ 19] The first question these provisions raise is whether Ms. Arnold's claim was "covered by insurance" within the meaning of § 1–39–115(a) such that the risk manager properly forwarded it to the Group Insurance Program, or "not covered by insurance" under § 1–39–115(d) meaning the risk manager was required to address it in accordance with § 1–41–106. Given that Ms. Arnold's underlying claim was one for medical insurance benefits payable under the Group Plan, it would seem to be one covered by insurance and properly forwarded to the Group Insurance Program for processing. However, Ms. Arnold's claim was also for breach of contract under the WGCA, precisely the sort of claim the State Self–Insurance Program is intend-

ed to address. Section 1–41–101 states expressly that the self-insurance account was created to remedy the "need to develop a method to handle [WGCA] claims. . . ." Section 1–39–104(a) provides that immunity from liability in actions based on a contract entered into by a government entity is waived except to the extent provided by the contract and the WGCA procedures apply to contractual claims against governmental entities. Thus, the State Self–Insurance Program requires the risk manager to handle the investigation, adjustment and settlement of WGCA claims and gives her authority up to $50,000 to settle such claims.

[¶ 20] Upon careful review of all of the relevant statutory provisions, it is clear Ms. Arnold's notice of claim included claims that fell under the State Self–Insurance Program and the risk manager was required to administer, supervise and manage the investigation, adjustment and settlement of the claim. The risk manager was mistaken in treating it solely as a claim for medical benefits covered by insurance and forwarding it to the Group Insurance Program. Ms. Arnold is not, however, entitled to the issuance of a writ of mandamus commanding the risk manager to do so.

 [¶ 21] As we have said, mandamus is appropriate only where a clearly defined, statutorily-required duty to perform exists. *Sublette County*, ¶ 10, 33 P.3d at 111. Absent a clear ministerial duty, mandamus is not an appropriate remedy. *Id.* Owing to the extraordinary character of mandamus and the caution courts exercise in awarding it, the right sought to be enforced must be clear and certain. *Id.*, ¶ 10, 33 P.3d at 112, citing *LeBeau v. State ex rel. White*, 377 P.2d 302, 303 (Wyo.1963). The writ does not issue in cases where the right in question is doubtful. *Sublette County*, ¶ 10, 33 P.3d at 112.

[¶ 22] Under the particular circumstances presented here, where the notice of claim sought payments denied under the Group Plan, the risk manager's duty was not clear and certain. Arguably, the claim was one covered by insurance and properly forwarded to the Group Insurance Program. While a careful review of the statutory provisions and the notice of claim make it clear that the risk

manager's duty was to begin an investigation into the breach of contract claim pursuant to the State Self–Insurance Program, that duty was not as clear and certain as to make the extraordinary remedy of mandamus appropriate. Additionally, as discussed in the following paragraphs, had the risk manager investigated the claim as required she likely would have denied it on the ground that Ms. Arnold had not exhausted the Group Plan appeals process. The district court did not abuse its discretion in declining to issue a writ of mandamus.

**2. Declaratory Judgment**

 [¶ 23] Ms. Arnold contends the district court erred in granting summary judgment for A & I's director and risk manager on her complaint for declaratory judgment. Summary judgment is appropriate in a declaratory judgment action so long as there are no genuine issues of material fact. *Coffinberry v. Town of Thermopolis*, 2008 WY 43, ¶ 4, 183 P.3d 1136, 1137 (Wyo.2008). In the present case, the district court concluded there was no justiciable controversy and Ms. Arnold was not entitled to a declaration of her rights under the Group Plan or the WGCA.

 [¶ 24] The Uniform Declaratory Judgments Act (Declaratory Judgments Act), Wyo. Stat. Ann. § 1–37–101 through § 1–37–115 (LexisNexis 2007), authorizes Wyoming courts to "declare rights, status and other legal relations whether or not further relief is or could be claimed." Section 1–37–102. Section 1–37–103 provides further:

Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations.

[¶ 25] Insurance contracts come within the purview of the Declaratory Judgments Act. *Mountain West Farm Bureau Mut. Ins. Co. v. Hallmark Ins. Co.*, 561 P.2d 706 (Wyo.

1977). Likewise, questions of statutory interpretation come within the plain language of the statute. Pursuant to § 1–37–104, "A contract may be construed either before or after there has been a breach thereof." Likewise, a statute upon which administrative action was, or is to be, based may be interpreted before or after the agency acts. *Wyoming Community College Comm'n v. Casper Community College Dist.*, 2001 WY 86, ¶ 13, 31 P.3d 1242, 1248 (Wyo.2001).

[¶ 26] Section 1–37–114 provides that the Declaratory Judgments Act is remedial; "[i]ts purpose is to settle and to afford relief from uncertainty and insecurity with respect to legal relations, and is to be liberally construed and administered." Although a declaratory judgment action should not be used to replace specific administrative relief, the existence of another remedy will not, of itself, preclude declaratory judgment relief. *City of Cheyenne v. Sims*, 521 P.2d 1347, 1350 (Wyo.1974); *Rocky Mountain Oil & Gas Ass'n v. State*, 645 P.2d 1163, 1168 (Wyo.1982). Where the desired relief concerns the interpretation of a statute upon which the administrative action is, or is to be, based, the action should be entertained. *Id.* As we have explained:

> Ordinarily, a declaratory judgment action is not a substitute for an appeal [from administrative decisions.] ... If, however, such desired relief concerns the validity and construction of agency regulations, or if it concerns the constitutionality or interpretation of a statute upon which the administrative action is, or is to be, based, it should be entertained.

*Wyoming Community College Comm'n*, ¶ 13, 31 P.3d at 1248 (quoting *Rocky Mountain Oil & Gas Ass'n v. State*, 645 P.2d 1163, 1168 (Wyo.1982)). "The Act is an appropriate vehicle, not for prejudging issues that should be decided by an administrative agency, but for interpreting the statute ... upon which the administrative action is based." *Wyoming Dep't of Revenue v. Exxon Mobil Corp.*, 2007 WY 21, ¶ 18, 150 P.3d 1216, 1223 (Wyo.2007). A complaint seeking declaration of rights under a contract also should be entertained. §§ 1–37–103 and 104.

[¶ 27] Ms. Arnold sought an interpretation of her contractual rights under the Group Plan. She also sought an interpretation of the risk manager's statutory duties under the WGCA and the State Self–Insurance Program. Both of these matters fall within the purview of the Declaratory Judgments Act. The district court concluded, however, that Ms. Arnold's complaint did not involve a justiciable controversy and she was not entitled to declaratory relief.

[¶ 28] Generically, a justiciable controversy is defined as a controversy fit for judicial resolution. *Cox v. City of Cheyenne*, 2003 WY 146, ¶ 9, 79 P.3d 500, 505 (Wyo. 2003). Many doctrines are encompassed within the concept of justiciability including standing, ripeness, and mootness. *Id.* The district court based its decision in part on the doctrine of ripeness.

[¶ 29] The ripeness doctrine is a category of justiciability "developed to identify appropriate occasions for judicial action." *Tarraferro v. State ex rel. Wyo. Med. Comm'n*, 2005 WY 155, ¶ 8, 123 P.3d 912, 916 (Wyo.2005), quoting 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3529, p. 146 (1975). The doctrine of ripeness is a judicially created limitation on the availability of judicial review in administrative law cases.

> [I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*BHP Petroleum Co., Inc. v. State, Wyoming Tax Comm'n*, 766 P.2d 1162, 1164–65 (Wyo. 1989). We evaluate ripeness in two prongs, which include, first, an evaluation of the fitness of the issues presented for judicial review and, second, an evaluation of the hardship to the parties if judicial review is denied. *Id.*

[¶ 30] By her complaint, Ms. Arnold sought a determination as to whether: 1) the Group Plan allowed her to bring a legal

action to recover benefits allegedly due without first having completed the Group Plan appeals process; and 2) the WGCA required the risk manager to settle or deny her notice of claim rather than forwarding it to the Group Insurance Program. As discussed above, these issues fall squarely within the scope of the Declaratory Judgments Act because they involve interpretation of contractual and statutory rights and duties. We conclude, therefore, that they are fit for judicial review.

[¶ 31] We further conclude hardship would result from a denial of judicial review. If, as a matter of law, the Group Plan allowed Ms. Arnold to bring an action in court without first completing the Group Plan appeals process, a judicial determination to that effect would have allowed her to move forward with her breach of contract claim without further delay. If, as matter of law, the WGCA required the risk manager to investigate, and settle or deny, the notice of claim, a judicial determination to that effect would have caused the risk manager to act on the claim in accordance with § 1–41–105 of the State Self–Insurance Program. More was at issue here than an abstract disagreement about what Ms. Arnold and the risk manager could and could not do with respect to the Group Plan and the WGCA. A judicial determination of those issues was and is appropriate.

[¶ 32] We have already determined that upon receipt of Ms. Arnold's notice of claim, the risk manager was required to initiate and oversee an investigation and settle or deny the claim. Under ordinary circumstances, we would remand the case at this stage to the district court for a determination of Ms. Arnold's rights under the Group Plan. However, these are not ordinary circumstances. Ms. Arnold has already presented four separate claims in four different forums—her request for a medical necessity determination through Great–West's medical management program; the grievance she filed with the Group Insurance Program which the OAH denied; the WGCA notice of claim she filed with risk management; and the petition and complaint she filed in district court. It is time her rights under the Group Plan were

determined. We have the same information the district court had and would have upon remand. Ms. Arnold has fully presented her argument that the Group Plan allows her to bring a legal action. The facts are not in dispute and the issue is one requiring *de novo* review. We conclude, therefore, for reasons of judicial economy that it is appropriate for this Court to proceed to determine whether the Group Plan allowed Ms. Arnold to file a legal action without first completing the Group Plan appeals process. *See Wells Fargo Bank Wyoming, N.A., v. Hodder,* 2006 WY 128, ¶ 32, 144 P.3d 401, 412 (Wyo.2006), concluding for reasons of judicial economy that this Court should decide the issue rather than remand.

[¶ 33] In support of her claim that she was allowed to bring legal action, Ms. Arnold cites the following Group Plan provision found under the heading, "Other Information a Member Needs to Know":

### Legal Actions

You may bring a legal action to recover under the Plan. Such legal action may be brought no sooner than 60 days, and no later than 3 years, after the time written proof of loss is required to be given under the terms of the Plan.

A & I's director and risk manager assert that A & I's rules for contested case hearings under the Group Plan provided the appropriate mechanism for Ms. Arnold to pursue her claim.

[¶ 34] Before considering the contested case rules, we look to the Group Plan itself. We begin with the provisions addressing medical management decisions because Ms. Arnold's claim arose after medical management denied her request for a determination that the services her husband received and for which she sought coverage were medically necessary. As it relates to Ms. Arnold's claim, the Group Plan states that medical management will review the medical necessity of services that have already been provided. In the event medical management determines the services were not medically necessary, the insured can appeal the decision.

[¶ 35] The Group Plan provides two levels of appeal.[1] The first level is an internal review in which a board certified physician reviewer in the same or similar specialty as the services provided reviews the services and makes a determination whether they were medically necessary. If the internal review denies authorization, a second level of appeal is available in which an external review is conducted by a doctor or group of doctors in the same or similar specialty as the services under review. The Group Plan states:

> One level of appeal must be completed for appeals involving urgent care and *two levels of appeal must be completed for all other appeals involving a [medical management] adverse determination, before a Member may bring civil action.* The appeal review will consider written comments, documents and any other information submitted by the Member, Authorized Representative or Doctor, regardless of whether the documentation was reviewed as part of the initial determination.

[¶ 36] It is undisputed that Ms. Arnold requested a determination under the Group Plan that the services her husband had received were medically necessary. Great–West's physician reviewer denied the request because there was insufficient documentation to establish that the treatments were medically necessary. With the denial, Ms. Arnold was advised of her appeal rights, including her rights to submit additional documentation and to an external review by an independent entity not affiliated with Great–West. Ms. Arnold did not submit additional documentation nor did she appeal. Instead, she filed a grievance with the Group Insurance Program presumably under the following Group Plan provision:

**Grievance Procedure**

 If you are not satisfied with how a claim has been settled, you may file a grievance with the [Group Insurance Program]. You must exhaust your Great–West appeals process before filing a Grievance. * * *

[¶ 37] As we have said:

> An insurance policy constitutes a contract between the insurer and the insured. As with other types of contracts, our basic purpose in construing or interpreting an insurance contract is to determine the parties' true intent. We must determine intent, if possible, from the language used in the policy, viewing it in light of what the parties must reasonably have intended. The nature of our inquiry depends upon how clearly the parties have memorialized their intent. Where the contract is clear and unambiguous, our inquiry is limited to the four corners of the document.
>
> We interpret an unambiguous contract in accordance with the ordinary and usual meaning of its terms. The parties to an insurance contract are free to incorporate within the policy whatever lawful terms they desire, and the courts are not at liberty, under the guise of judicial construction, to rewrite the policy. It is only when a contract is ambiguous that we construe the document by resorting to rules of construction. Whether a contract is ambiguous is a question for the court to decide as a matter of law.

*Cathcart v. State Farm Mut. Auto. Ins. Co.,* 2005 WY 154, ¶ 18, 123 P.3d 579, 587–588 (Wyo.2005).

[¶ 38] The appeal procedures applicable to medical necessity determinations set forth in the Group Plan, and of which Great–West advised Ms. Arnold in its denial letter, are clear and unambiguous. Upon receipt of medical management's initial conclusion that insufficient documentation supported her claim, Ms. Arnold had the opportunity to submit additional information from which a determination of medical necessity could be

---

1. Before describing the two levels, the Plan states:

> The appeal review will consider written comments, documents and any other information submitted by the Member, Authorized Representative or Doctor, regardless of whether the documentation was reviewed as part of the initial determination.

Given that the initial reviewer denied Ms. Arnold's request because insufficient documentation established that the treatment was medically necessary, this provision is significant. It gave Ms. Arnold the opportunity to present additional evidence at the appeal level to support her request.

made. Ms. Arnold did not submit additional information. Ms. Arnold also was required to complete two levels of appeal before bringing a civil action. She did not complete either level. She was not entitled to bring a civil action. Reading the medical management appeal provisions together with the legal action provision upon which Ms. Arnold relies, it is clear that the former provisions imposed limitations on the latter. That is, in the case of an adverse non-urgent medical management determination, the right to bring a legal action is limited by the express requirement that the insured complete the two levels of appeal.[2]

[¶ 39] Ms. Arnold asserts the Group Plan is ambiguous because, while the medical management provisions require an insured to appeal an adverse determination, the "Legal Actions" provision contains no such requirement and states instead that a legal action can be brought "no sooner than 60 days, and no later than 3 years, after the time written proof of loss is required." She contends this provision should be read to mean an insured may bring legal action 60 days after submitting proof of loss. At the very least, she maintains, the provision creates an ambiguity and should be construed in her favor.

[¶ 40] We interpret contracts as a whole, reading each provision in light of all the others to find the plain and ordinary meaning of the words. *Squillace v. Wyoming State Employees' and Officials' Group Ins. Bd. of Admin.*, 933 P.2d 488, 491 (Wyo. 1997). We are reluctant to read parts of an insurance contract in isolation. *Id.* In isolation, the "Legal Actions" provision might be interpreted as Ms. Arnold suggests. However, when read in light of the other provisions, it is clear that in the case of an adverse non-urgent medical management determination, the right to bring a legal action is limited by the express requirement that the insured complete the two levels of appeal. To interpret the Group Plan otherwise would render meaningless the provision requiring appeals from adverse medical management

determinations, an outcome this Court has consistently sought to avoid in interpreting contracts. *Stone v. Devon Energy Prod. Co.*, 2008 WY 49, ¶ 18, 181 P.3d 936, 942 (Wyo. 2008).

[¶ 41] Additionally, the "Legal Actions" provision allows a member to bring legal action no sooner than 60 days after the time written proof of loss is required to be given under the Plan. The purpose of a proof of loss is to enable an insurer to investigate a claim and determine its rights and liabilities. *Hawkeye–Security Ins. Co. v. Apodaca*, 524 P.2d 874, 877 (Wyo.1974). Medical management advised Ms. Arnold that it had insufficient documentation supporting a medical necessity determination and indicated additional medical records might be helpful. Ms. Arnold did not submit additional information. Under these circumstances, where the insurer expressly informs the insured that documentation is insufficient and the insured does not respond, we cannot conclude the proof of loss requirement for bringing a legal action was satisfied.

[¶ 42] Within her argument that the Group Plan allowed her to bring a legal action, Ms. Arnold also contends that the State has given Great–West complete discretion to determine what is, and what is not, medically necessary for purposes of coverage. She asserts that this violates public policy and the Group Insurance Act. We find nothing in the record to support these assertions. To the contrary, the Group Plan expressly provides several levels for review of Great–West's determination, including: an internal review by a board certified physician reviewer who was not involved in the initial adverse determination and is not a subordinate of the initial reviewer; an external review by an independent review entity not affiliated with Great–West; an administrative appeals process; and, upon completion of the two level Great–West appeals process, filing a legal action. The Group Plan does not give Great–West unbridled discretion to deter-

---

2. Our conclusion that an insured is required to complete the Group Plan appeals process before bringing a legal action necessarily means that the two year period for filing a notice of claim under the WGCA begins when that appeals process is completed, not when the initial determination is made whether the care was medically necessary.

mine whether treatment is medically necessary.

[¶ 43] Ms. Arnold contends the administrative appeals process is inadequate because the OAH has been unwilling to overturn Great–West's determinations as to whether services are medically necessary. In support of this contention, Ms. Arnold submitted the affidavit of an attorney who has handled Group Plan claims before the OAH. The attorney avers that in one such case before the OAH in 2006, the hearing examiner concluded he could not disregard the Group Plan language stating that medical necessity is "determined solely by Great–West." We do not find that language in the 2007 Group Plan and Ms. Arnold does not direct us to where it appears. To the extent the OAH may have taken the position in other cases that medical necessity is determined solely by Great–West, that is contrary to law and clearly erroneous. Beyond that comment, however, we decline to address in this case the adequacy of the Group Insurance Program administrative appeals process. Ms. Arnold did not exhaust the Great–West appeals process before filing her grievance; therefore, the issue of whether a preponderance of the evidence supported Great–West's determination was never addressed and the OAH did not have the opportunity to disregard or accept Great–West's determination.

## CONCLUSION

[¶ 44] The State Self–Insurance Program requires the risk manager to initiate and oversee the investigation, adjustment and settlement of claims brought against the state and its employees under the WGCA. Under the circumstances of this case, however, where the claim involved the payment of medical benefits under the state employee's group insurance plan, the risk manager's duty was not so clear as to make issuance of a writ of mandamus appropriate.

3. The declaratory judgment portion of this decision is limited to declaring that the Group Plan required Ms. Arnold to complete the two level appeals' process before filing a legal action. We have not decided the breach of contract claim. In the event Ms. Arnold completes the Group

[¶ 45] Ms. Arnold was entitled to a declaration of her rights under the Group Plan. Pursuant to the medical management provisions, she did not have the right to bring a legal action to recover under the Group Plan until she completed the required two level appeals process. We affirm the district court's order denying Ms. Arnold's petition for writ of mandamus and reverse the district court's order denying her complaint for declaratory judgment.[3]

Plan appeals process and still believes the Group Insurance Program, through Great–West, breached the contract, she will be entitled to bring legal action in accordance with the Group Plan and the WGCA.