2001 WY 91

**In the Matter of the BOARD OF COUNTY COMMISSIONERS, SUBLETTE COUNTY, Wyoming, Section 14 Petition, before the State Board of Equalization, Docket Nos. 97–3 and 97–10:,**

**State of Wyoming, ex rel., Sublette County Board of County Commissioners for Sublette County, Wyoming, Appellant (Petitioner),**

v.

**State of Wyoming, State Board of Equalization, and Roberta A. Coates and Ron Arnold, the two acting members of said board, Appellees (Respondents).**

No. 00–248.

Supreme Court of Wyoming.

Oct. 4, 2001.

John C. McKinley and Nancy D. Freudenthal of Davis & Cannon, Cheyenne, WY, Representing Appellant.

Gay Woodhouse, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Harry D. Ivey, Assistant Attorney General, Cheyenne, WY, Representing Appellees.

Before LEHMAN, C.J., and GOLDEN, HILL, and VOIGT, JJ., and DONNELL, D.J.

VOIGT, Justice.

[¶ 1] The Board of County Commissioners for Sublette County (Sublette County) sought a writ of mandamus in the district court directing the State Board of Equalization (the Board) to utilize contested case procedures in addressing a petition filed under Wyo. Stat. Ann. § 39–1–304(a)(xiv) (Michie 1997). We affirm the district court's denial of the writ of mandamus.

### ISSUES

[¶ 2] Two interrelated issues are raised in this appeal:

1. Whether Wyoming law requires that a "careful examination" under Wyo. Stat. Ann. § 39–1–304(a)(xiv)—now Wyo. Stat. Ann. § 39–11–102.1(c)(x) (LexisNexis 2001)—be conducted by full contested case proceedings.

2. Whether the district court's denial of the petition for writ of mandamus directing the Board to conduct full contested case proceedings was in accordance with Wyoming law.

### FACTS

[¶ 3] This appeal constitutes one more chapter in a lengthy tax dispute involving Exxon Corporation (Exxon), Sublette County, and the Board. Sublette County filed a Petition for Board Examination pursuant to Wyo. Stat. Ann. § 39–1–304(a)(xiv) (Section 14) on January 23, 1997. Sublette County

requested that the Board investigate allegations that a 1989 Settlement Agreement,[1] as it was administered, resulted in illegal, improper, and unequal assessment of the Shute Creek facility production for ad valorem tax purposes of all raw gas owned and/or extracted by Exxon in Sublette County. At the center of Sublette County's petition were allegations that the use of the "Howell and Yates" agreements as comparison values permitted Exxon to make numerous improper deductions. Sublette County questioned Exxon's valuations for the 1992–1996 tax years (1991–1995 production years).

[¶4] Exxon and the Wyoming State Department of Revenue (DOR) subsequently filed a declaratory judgment action that challenged Sublette County's authority to continue with its Section 14 petition. The district court ruled in Sublette County's favor, and on appeal, this Court ruled that, despite the Settlement Agreement, the Board had a duty to "carefully examine" the petition. *Exxon Corp. v. Board of County Com'rs, Sublette County*, 987 P.2d 158, 166–67 (Wyo.1999).

[¶5] On September 28, 1999, the Board entered its Order Setting Hearing to Elicit Parties Input Regarding Procedure to be Observed During Board's Investigation Pursuant to Wyo. Stat. § 39–1–304(a)(xiv). The order recommended that the parties submit their suggested format for the investigation to the Board for consideration. Sublette County recommended that the examination be conducted using a contested case procedure pursuant to Wyo. Stat. Ann. § 16–3–107 (LexisNexis 2001). Exxon took the position that the Board had complete discretion in determining the conduct of the investigation, while the DOR took the position that the Board needed to "carefully examine this case." On February 3, 2000, the Board issued its Amended Order Establishing Procedure for an Examination Under Wyo. Stat. § 39–1–304(a)(xiv), Recodified as § 39–11–102.1(c)(x). Persuaded by the arguments presented by the DOR and Exxon, the Board conducted what it deemed a regulatory proceeding rather than a contested case proceeding.

[¶6] In order to conduct a thorough examination, the Board requested assistance from the DOR and the Department of Audit (DOA). The Board directed that two DOR representatives appear before it on April 10, 2000, to answer the Board's questions. The parties were allowed to attend the proceeding and submit written questions to the Board prior to the proceeding, but were not otherwise allowed to participate in the proceeding.

[¶7] The Board also asked that the DOR compute the value of Exxon's production using various mathematical methods for the years 1992–1995. The DOR presented the Board with four different valuation options for the years in question using the proportionate profits valuation method and four valuation options using the netback valuation method.[2] The Board also examined valuations derived from the use of the "Howell and Yates" agreement. Except for one of the scenarios presented, the valuation methods produced lower values than those issued by the DOR using the methodology set forth by the 1989 Settlement Agreement. The

---

1. In January 1989, a settlement was reached in another case involving these parties and a "Stipulation for Entry of Declaratory Judgment" was filed in the district court. *Exxon Corp. v. Board of County Com'rs, Sublette County*, 987 P.2d 158, 160 (Wyo.1999). Exxon, the Wyoming Attorney General, and the Sublette County Attorney signed the Agreement. *Id.* Under the terms of the agreement, Exxon paid the State and Sublette County twelve million dollars in full satisfaction of Exxon's severance and ad valorem tax liability for 1986, 1987, and 1988 LaBarge Wellfield production. *Id.* After August 31, 1991, the agreement provided:

> [T]he State agrees that it will recognize the Howell and Yates agreements as a comparison value and that the comparison value method

may be used in conjunction with other recognized appraisal techniques to determine value. If the State uses any method other than the comparison value method based on the Howell and Yates agreements, the Parties agree that the question of future taxability, for severance and ad valorem purposes, the value of future . . . production remain open and are not resolved by this Agreement.

*Id.* at 166.

2. The Board understood that Wyo. Stat. Ann. § 39–2–208(d)(iii) (Michie 1997) precluded the use of the netback method when the gas to be valued is processed by the producer, but utilized this information only as a baseline comparison.

Settlement Agreement provided that "the State agrees that it will recognize the Howell and Yates agreements as a comparison value and that the comparison value method may be used in conjunction with other recognized appraisal techniques to determine value."

[¶ 8] The Board issued its Examination Report on June 28, 2000. It concluded that:

A. The valuation methodology used by the DOR did not result in improper, illegal or unequal assessments for production years 1991 through 1995.

B. The methodology used reflects fair market value of Exxon's production of gas and associated minerals at the LaBarge Wellfield.

C. The Howell and Yates agreements were entered into by Exxon and Howell and Yates after extensive litigation which convinces the SBOE [State Board of Equalization] of the arms length nature of these agreements and the nonexistence of collusion.

D. We find no need to continue with this regulatory examination and recognize that the parties may litigate Exxon's reported numbers in other contested cases.

Sublette County sought relief from this report via a petition for writ of mandamus in the district court, which petition was denied. This appeal followed.[3]

### STANDARD OF REVIEW

[¶ 9] Wyo. Stat. Ann. § 1–30–101 (LexisNexis 2001) provides that "[m]andamus is a writ issued in the name of the state to an inferior tribunal ... board or person commanding the performance of an act which the law specially enjoins as a duty resulting

from an office, trust or station." Mandamus may require an inferior tribunal to exercise its judgment or to proceed to discharge any of its functions, but it cannot control judicial discretion and cannot be issued when there is an adequate remedy at law, i.e., a right of appeal in some forum. Wyo. Stat. Ann. §§ 1–30–102 and 1–30–104 (LexisNexis 2001).[4]

[¶ 10] The function of mandamus is to command the performance of a ministerial duty that is plainly defined and required by law. "Mandamus will not lie unless the duty itself is absolute and incontrovertible, or clear, certain, and indisputable." *State ex rel. Epp v. Mayor,* 894 P.2d 590, 595 (Wyo. 1995). If the lower tribunal has the right to exercise discretion regarding an issue, mandamus is not an appropriate remedy. *State ex rel. Feeney v. District Court of Seventh Judicial Dist.,* 614 P.2d 710, 711 n. 1 (Wyo. 1980). A public official's duty is ministerial when "it is absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Blacks Law Dictionary* 996 (6th ed.1990). Interpretation of a statutory duty in the context of mandamus is a question of law, reviewed *de novo,* following the general rules of statutory construction. *Basin Elec. Power Co-op. v. Bowen,* 979 P.2d 503, 506 (Wyo. 1999).

[T]he writ of mandamus will issue only where the duty to be performed is ministerial and the obligation is peremptory and plainly defined. The law must not only authorize the demanded action but require it; and the duty must be clear and indisputable. * * *

3. A Petition for Writ of Mandamus filed in this Court was also denied. Procedurally, the case is now before this Court on the denial of the petition in the district court.

4. Sublette County contends that because it had no right to seek judicial review of the Board's report, it had no adequate remedy at law, making mandamus appropriate. Only a "person" aggrieved or adversely affected by a final decision of an agency may appeal to a district court. Wyo. Stat. Ann. § 16–3–114(a) (LexisNexis 2001). The statutory definition of "person" expressly excludes an agency, so an agency is not allowed to appeal an adverse decision. *Pritchard*

*v. State Division of Vocational Rehabilitation, Dept. of Health and Social Services,* 540 P.2d 523, 529 (Wyo.1975). The board of county commissioners is a board pursuant to the Wyoming Administrative Procedure Act and is within the definition of an agency, which is specifically precluded from seeking review of an administrative decision. It has no standing. *Basin Elec. Power Co-op., Inc. v. Department of Revenue, State of Wyo.,* 970 P.2d 841, 848 (Wyo.1998). However, an agency may appeal a district court ruling to the Wyoming Supreme Court. *Safety Medical Services, Inc. v. Employment Sec. Com'n of Wyoming,* 724 P.2d 468, 471 (Wyo.1986).

\* \* \*

\* \* \* [I]n order to warrant the issuance of mandamus, not only must there be a legal right in the relator, but owing to the extraordinary and drastic character of mandamus and the caution exercised by courts in awarding it, it is also important that the right sought to be enforced be clear and certain, so as not to admit of any reasonable controversy. The writ does not issue in cases where the right in question is doubtful.

*LeBeau v. State ex rel. White*, 377 P.2d 302, 303 (Wyo.1963).

[¶ 11] Whether or not to issue a writ of mandamus is left to the sound judicial discretion of the trial court. *State ex rel. Cross v. Board of Land Com'rs*, 50 Wyo. 181, 58 P.2d 423, 426 (1936). The denial of a petition for writ of mandamus will only be reversed upon a finding of abuse of discretion. *State ex rel. Spriggs v. Shipton*, 74 Wyo. 239, 286 P.2d 601, 602 (1955). An abuse of discretion occurs when the trial court could not reasonably conclude as it did. *Martinez v. State*, 611 P.2d 831, 838 (Wyo. 1980). With respect to judicial discretion, we have said that:

"Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen*, 41 Wash.App. 495, 704 P.2d 1236 (1985)."

*Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998) (*quoting Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)). There is a heavy burden placed upon an appellant to show such abuse. *Blake v. State*, 933 P.2d 474, 477 (Wyo.1997).

## DISCUSSION

[¶ 12] Sublette County contends that in light of its direct interest in the collection of ad valorem taxes, the Board should have "carefully examined" Sublette County's Section 14 petition using the contested case procedures found in the Wyoming Administrative Procedure Act (WAPA), rather than the regulatory proceeding utilized by the Board. According to Sublette County, all parties in administrative proceedings are entitled to due process, which includes a meaningful opportunity to be heard and to participate in the proceedings, pursuant to Wyo. Stat. Ann. § 16–3–107. Further, Sublette County cites to *Basin Elec. Power Co-op., Inc. v. Department of Revenue, State of Wyo.*, 970 P.2d 841, 849 (Wyo.1998), for the proposition that the Board only has the authority to hear contested cases and to promulgate rules and regulations pursuant to the WAPA, and cites to *Antelope Valley Imp. and Service Dist. of Gillette v. State Bd. of Equalization for State of Wyo.*, 4 P.3d 876, 880 (Wyo.2000) for the proposition that regulatory proceedings can be conducted as contested case hearings. The Board asserts that Sublette County did not meet the standard for issuing a writ of mandamus because Sublette County did not demonstrate that the Board had a clear, indisputable "ministerial" duty to utilize a contested case proceeding in examining Sublette County's petition.

[¶ 13] A contested case is defined in Wyo. Stat. Ann. § 16–3–101(b)(ii) (Lexis-Nexis 2001) as "a proceeding including, but not restricted to ratemaking, price fixing and licensing, in which legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing . . . ." Sublette County asserts that its due process rights were violated because the Board did not conduct a contested case hearing. We have interpreted the term "hearing" to mean a "trial type hearing." *Scarlett v. Town Council, Town of Jackson, Teton County*, 463 P.2d 26, 29 (Wyo.1969). Therefore, if a trial type hearing is "required by law," the proceeding is a contested case, and the applicable procedures in the WAPA must be followed. *Tri-State Generation and Transmission Ass'n, Inc. v. Wyoming Public Service Com'n*, 735 P.2d 718, 721 (Wyo.1987).

[¶ 14] Analysis of this issue requires a reading of pertinent portions of Wyo. Stat. Ann. § 39–1–304(a) (emphasis added):

(a) The state board of equalization shall perform the duties specified in article 15, section 10 of the Wyoming constitution and shall hear appeals from county boards of

equalization and review final decisions of the department upon application of any interested person adversely affected, including boards of county commissioners for the purposes of this subsection, **under the contested case procedures of the Wyoming Administrative Procedure Act.** Any interested person adversely affected by the adoption, amendment, or repeal of a rule pursuant to W.S. 16–3–103(a) shall be afforded an opportunity for a hearing before the board. **In addition, the board shall:**

\* \* \*

(xiv) **Carefully examine** into all cases wherein it is alleged that property subject to taxation has not been assessed or has been fraudulently, improperly, or unequally assessed, or the law in any manner evaded or violated, **and cause to be instituted proceedings which will remedy improper or negligent administration of the tax laws of the state** [.]

 [¶ 15] This Court has previously stated that the language of subsection (a) delineates part of the Board's adjudicatory function, while the language of subsection (xiv) delineates part of the Board's "broad" regulatory function. *Exxon Corp.*, 987 P.2d at 163. We have also recognized that the Board's power to hear appeals under subsection (a) is separate and distinct from its power to examine alleged taxation improprieties under subsection (xiv). *Id.* Further, the statute clearly provides that the "contested case procedures of the Wyoming Administrative Procedure Act" are required for proceedings under subsection (a), but makes no such reference in subsection (xiv). The primary focus of statutory interpretation, of course, is to effectuate legislative intent. *State Dept. of Revenue and Taxation v. Pacificorp*, 872 P.2d 1163, 1166 (Wyo.1994); *Olheiser v. State ex rel. Wyoming Worker's Compensation Div.*, 866 P.2d 768, 770 (Wyo. 1994). This Court is not free to read into subsection (xiv) a requirement that is not

there. *In re Estate of Fosler*, 13 P.3d 686, 692 (Wyo.2000). In addition, neither party has suggested that the statute is ambiguous, so application of the rules of construction is unnecessary, and the plain meaning of the statutory language is simply given effect. *Tietema v. State*, 926 P.2d 952, 954 (Wyo. 1996).

 [¶ 16] One measure of a statute's meaning is the interpretation placed on it by the agency charged with its administration, and this Court will defer to that interpretation where it does not conflict with legislative intent. *General Chemical Corp. v. Wyoming State Bd. of Equalization*, 819 P.2d 418, 422 (Wyo.1991). In that regard, the Board has adopted procedural rules recognizing various non-contested-case methods for carefully examining Section 14 petitions and has conducted such non-contested-case examinations.[5] However, where the statute is not alleged to be ambiguous, and where we have found no ambiguity, resort to such interpretive aids is unwarranted. *Wyoming State Tax Com'n v. BHP Petroleum Co., Inc.*, 856 P.2d 428, 434 (Wyo.1993).

 [¶ 17] There is no arguing with the proposition that "[p]arties to administrative proceedings are entitled to due process of law," or with the proposition that "[t]he procedures outlined in the Wyoming Administrative Procedure Act are designed to provide parties in administrative proceedings with due process." *Amoco Production Co. v. Wyoming State Bd. of Equalization*, 7 P.3d 900, 905 (Wyo.2000). And *Basin Elec. Power Co-op., Inc.*, 970 P.2d at 849, contains language that seems to limit the authority of the Board to contested cases and rulemaking, both under the WAPA. However, *Basin Elec. Power Co-op., Inc.* dealt with a perceived usurpation by the Board of the DOR's statutory functions, and not with the appropriate methods for handling a Section 14 petition.[6] Since *Basin Elec. Power Co-op.*,

---

5. *See Rules of the Board of Equalization*, ch. 4, § 3 (1998) and Equalization Quarterly Review, Vol. 1, No. 1, *Investigative Report of Rocky Mountain Airways*, Docket No. 93–160 (May 23, 1995) (the Board conducted an inquiry as to why the DOR had changed its initial valuation determination when no appeal had been filed).

6. "With the Wyoming Government Reorganization Act, the legislature created two separate entities with separate duties and responsibilities. \* \* \* The Board simply does not have authority to hold an investigative hearing or to submit an 'Investigative Report' to the Department con-

*Inc.*, we have recognized at least five separate duties the Board may perform and we have distinguished between the Board's adjudicatory functions and its regulatory or administrative functions. *Antelope Valley Imp. and Service Dist. of Gillette*, 4 P.3d at 882. Likewise, we have concluded that contested case procedures do not necessarily apply to Section 14 petition procedures:

> [T]he 30–day limit provided by the Board's rules is a limitation on the time a party has to file a contested case proceeding with the Board. Section 14 proceedings, on the other hand, are governed by chapter 4 of the Board's rules, which does not limit the time in which a party may present allegations pursuant to Section 14.

*Exxon Corp.*, 987 P.2d at 163–64.

## CONCLUSION

■ [¶ 18] The plain language of Wyo. Stat. Ann. § 39–1–304(a)(xiv) makes it clear, when read in the context of the entire statute, that the legislature did not therein impose a "clear, certain, and indisputable" duty to utilize a contested case proceeding in "carefully examining" Section 14 petitions, although the Board may choose to do so. We cannot legislate such a duty. Neither can we say that due process so clearly requires a contested case proceeding for Section 14 petitions that a writ of mandamus should have issued to that effect. Rather, we conclude that Section 14 does not require a "trial type" hearing and the district court did not abuse its discretion in denying the writ of mandamus. The order of the district court denying the Petition for Writ of Mandamus is affirmed.

cerning the Department's appraisal methods without the Department director's recommendation. *See* Wyo. Stat. § 39–2–102 (Cum.Supp. 1993)." *Basin Elec. Power Co-op., Inc.*, 970 P.2d at 849. The problem being addressed in *Basin*

*Elec. Power Co-op., Inc.* was the DOR's adoption of an appraisal method that it believed to be mandated by the Board through its Investigative Report, without the Board having followed statutory and due process requirements.