# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 35

**OCTOBER TERM, A.D. 2024**

**March 27, 2025**

RANDY W. STEVENS, individually
and as Trustee of the Randy W. Stevens
Living Trust and QUALITY
LANDSCAPE & NURSERY, INC.,

Appellants
(Plaintiffs/Defendants),

v.

THE GOVERNING BODY OF THE
TOWN OF SARATOGA, WYOMING,
a Wyoming municipal corporation,

Appellee
(Defendant/Plaintiff).

S-24-0177

*Appeal from the District Court of Carbon County*
The Honorable Dawnessa A. Snyder, Judge

*Representing Appellants:*
    James R. Salisbury, The Salisbury Firm, P.C., Cheyenne, Wyoming.

*Representing Appellee:*
    Jane M. France, Patrick M. Brady, and Craig Paul Kapp of Sundahl, Powers, Kapp,
    & Martin, Cheyenne, Wyoming.  Argument by Mr. Brady.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]    The Randy W. Stevens Living Trust (Stevens Trust) owns land in Saratoga, Wyoming, that is bordered on the south by an alleyway owned by the Town of Saratoga (the Town).  Randy Stevens is the trustee of the Stevens Trust and the sole shareholder of Quality Landscape & Nursery, Inc. (Quality Landscape), which uses the Stevens Trust land (the Stevens Property).  Over the years, various disputes have arisen between the Town and the Stevens Trust, Mr. Stevens, and Quality Landscape regarding their adjacent properties.

[¶2]    These disputes culminated in a 2019 judgment in favor of the Town, from which Mr. Stevens, the Stevens Trust, and Quality Landscape did not appeal.  In 2023, the Stevens Trust and Quality Landscape filed a motion for order to show cause and for issuance of a writ of mandamus.  The district court dismissed the motion as barred by the doctrine of res judicata and the parties' contractual limitations period.  It also decided mandamus was not available under the circumstances of the case.  Mr. Stevens, the Stevens Trust, and Quality Landscape now appeal the dismissal on various grounds.

[¶3]    We affirm.

## ISSUES

[¶4]    While the Stevens Parties[1] assert five issues on appeal, we find the following issues, rephrased, as dispositive:

1. Did the district court err by concluding the relief sought in the motion for order to show cause was barred by the doctrine of res judicata?

2. Did the district court err by concluding mandamus relief was not available?

---

[1] Throughout the history of this case, there have been some inconsistencies as to which of Mr. Stevens, the Stevens Trust, and Quality Landscape is/are filing pleadings, motions, and other documents, likely due to the fact that the district court consolidated three cases—one where the Stevens Trust was the plaintiff, one where Quality Landscape was the plaintiff, and one where the Stevens Trust, Quality Landscape, and Mr. Stevens were all defendants and counterclaimants.  For example, the Notice of Appeal states that the Stevens Trust, Quality Landscape, and Mr. Stevens are appealing the district court's order of dismissal.  However, the district court's dismissal stemmed from a motion brought by only the Stevens Trust and Quality Landscape.  In the order from which they appeal, the district court ruled as to the Stevens Trust, Quality Landscape, and Mr. Stevens.  There is no dispute related to the actions or inactions of any of those parties vis-à-vis the others or regarding the applicability of the district court's order of dismissal to all of them.  As a result, and for ease of reference, where appropriate we will simply refer to some or all of those three parties as the "Stevens Parties."

3. Is the Town judicially estopped from asserting it was excused from reconstructing the alleyway?

**FACTS**

*General Background*

[¶5]   In 2008 and 2009, the Stevens Trust, of which Mr. Stevens is the trustee and sole shareholder, purchased ten lots of land in Saratoga in part to store landscaping vehicles and equipment.  Mr. Stevens also intended to sell dirt from the property through Quality Landscape.  None of the lots were developed, nor did they contain any water, sewer, electric, or gas utilities.  The property contained various elevations that required grading to make it suitable for the Stevens Parties' intended purposes.  An alleyway owned and maintained by the Town sits immediately south of the Stevens Property.

[¶6]   Over time, various disputes have arisen between the Town and the Stevens Parties related to their properties.  The current dispute involves the Stevens Parties' claims that the Town has failed to:  1) reconstruct the alleyway bordering the Stevens Property, including by installing a rock and gabion basket retaining wall along the entirety of the border; 2) authorize and/or facilitate installation of water, sewer, and electrical service for the Stevens Property; 3) permit access to the Stevens Property from River Street; and 4) allow the Stevens Parties to remove a retaining wall north of the Stevens Property.  Because the district court found the Stevens Parties' claims were barred by res judicata, an understanding of the long history of the dispute between the parties is necessary.

*January 2008-June 2010*

[¶7]   In 2008, Quality Landscape applied for and received a temporary mining permit from the Wyoming Department of Environmental Quality (DEQ) to excavate and sell dirt from the Stevens Property.  The permit was conditioned on Quality Landscape receiving approval and any required permits from the Town.  Without receiving the Town's approval or the necessary permits, Mr. Stevens, the operator under the permit, removed dirt from the Stevens Property and began constructing a retaining wall on the north and east side of the Stevens Property.  The Town subsequently sent him a cease-and-desist order.

[¶8]   When Mr. Stevens failed to abide by the order, the Town successfully prosecuted him for nuisance.  The municipal court ordered Mr. Stevens to comply with the Town's ordinances and requirements as to site plans and permits before proceeding with any construction, and to enter into an agreement with the Town to abate certain dangerous conditions caused by his activity.

[¶9]   Thereafter, on August 19, 2009, Mr. Stevens and the Town entered into a Stipulated Settlement Agreement.  Mr. Stevens agreed to remove the northside retaining wall and was

2

permitted to remove soil from the Stevens Property so long as he abated any resulting drainage issues. The Town agreed to permit street access to Mr. Steven's property after he applied for an excavation permit in accordance with the municipal code. The Town also agreed to reconstruct the alleyway between its property and the Stevens Property.

[¶10] A few months later, the parties were back in court, each alleging the other violated the parties' Stipulated Settlement Agreement. Specifically, in November 2009 the Town filed a civil complaint against all three of the Stevens Parties seeking injunctive relief related to its concerns with the northside retaining wall's integrity and Mr. Stevens' excavation and removal of dirt from the property. According to the complaint, Mr. Stevens' actions violated the Stipulated Settlement Agreement and was causing stormwater drainage issues. The three Stevens Parties answered by generally denying the Town's assertions. In addition, the Stevens Trust and Mr. Stevens filed counterclaims alleging the Town breached the Stipulated Settlement Agreement by impermissibly prohibiting Mr. Stevens from removing dirt from the property and not completing reconstruction and regrading of the alleyway. The Stevens Trust and Mr. Stevens also sought a writ of mandamus that would require the Town to provide water and sewer lines for the Stevens Property.

[¶11] After mediation, the Town and the Stevens Parties entered into a Consent Decree on June 21, 2010. According to the Consent Decree, the parties agreed the Town would reconstruct the alleyway according to finished contours or grades and a construction timetable agreed upon by the parties, with the parties sharing costs. The Consent Decree also required the Town to submit a written request to Carbon Power & Light to remove a transformer box from the alleyway and to then rebury the power transmission line underneath the alleyway. Pursuant to the Consent Decree, the Stevens Parties were to submit a site development plan and maintain and stabilize the slope on the Stevens Property. The Town was required to do the same with the alleyway, all in an effort to minimize stormwater discharge onto and erosion of the Stevens Property. Finally, the Stevens Parties were to apply for permission to construct a driveway to access the Stevens Property from River Street, and the Town was to issue the permit within ten days.

[¶12] The Consent Decree also contained a statute of limitations provision, which stated:

> 30. <u>Statutes of Limitations.</u> The Parties agree that any action in relation to an alleged breach or nonperformance of this Agreement shall be commenced within one (1) year of the date of the breach or nonperformance, without regard to the date the breach or nonperformance is discovered. Any action not brought within that one (1) year time period shall be barred, without regard to any other limitations period set forth by law or statute.

3

[¶13]  Over the next several years, the parties filed various motions accusing one another of violating the Consent Decree, with the district court entering several orders addressing the motions.  All of the motions were filed as part of the docket originating from the Town's 2009 complaint (hereinafter the 2009 case).

[¶14]  On October 22, 2010, the Stevens Parties filed a motion asking the district court to order the Town to comply with the Consent Decree and seeking sanctions.  The motion alleged the Town violated the Consent Decree by failing to survey the soil and propose finished contours and grades within fifteen days of receiving Mr. Stevens' proposed site development plan, as required by the decree.  The Town objected and argued it complied with the Consent Decree.

[¶15]  The district court held an evidentiary hearing on February 25, 2011, and denied the Stevens Parties' motion on March 1, 2011.  Among other things, the district court held, based on the evidence presented and the credibility of the witnesses, "the Town has made reasonable efforts to comply with the Consent Decree," "the Town performed a sufficient survey on the type of soil," and "the Town proposed reasonable finished contours and grades as to the alleyway to minimize storm water runoff and discharge[.]"  The court further declined to award the Stevens Parties any damages or attorney fees.  The Stevens Parties did not appeal the district court's order.

[¶16]  On June 7, 2011, the Town filed a motion for an order to show cause and for an emergency restraining order, alleging Mr. Stevens violated the Consent Decree by excavating soil from the Town's alleyway and an adjacent property.

[¶17]  The district court granted a temporary restraining order and, on July 22, 2011, issued a permanent restraining order prohibiting Mr. Stevens from removing soil located near, in, or under the alleyway and a nearby building.

[¶18]  On September 9, 2011, the Town filed another motion for order to show cause, this time asking the district court to hold Mr. Stevens in contempt for violating the permanent restraining order.  The Stevens Parties filed a response denying Mr. Stevens violated the restraining order and, on September 28, 2011, filed a motion for an order of default, sanctions, and damages, alleging the Town failed to comply with its obligation under the Consent Decree.  Specifically, the Stevens Parties asserted the Town failed to reconstruct the alleyway within a reasonable time, and that the Town took no action "to abate [a] 'dangerous mining situation' or to protect the Hugus Ditch."  The Stevens Parties asked the district court to find the Town in default and/or violation of the Consent Decree and to order the Town to take immediate action to abate the dangerous mining situation and the dangerous condition.  The Stevens Parties also requested various sanctions against the Town.  On November 30, 2011, the Stevens Parties amended the motion to contend the

4

Town had proposed a rock and gabion basket retaining wall in the alleyway but, without providing notice, altered its plan and instead used sheet pilings to address the erosion issue. Further, the Stevens Parties alleged the Town trespassed and unlawfully encroached on the Stevens Property in installing the sheet piling wall, breached the duty of good faith and fair dealing under the Consent Decree, and generally defaulted under the Consent Decree.

[¶19]  On January 27, 2012, after an evidentiary hearing, the district court denied the Town's request for an order to show cause for the alleged violation of the permanent restraining order.  As to the Stevens Parties' motion for default, sanctions, and damages, the court found the Town breached the Consent Decree by not submitting the finished contours or grades of its altered plan to the Stevens Parties, and by installing a sheet piling wall adjacent to two of the lots instead of a rock and gabion basket wall, as previously approved.  However, the district court found the Town's "de minimus breach" was "a reasonable modification" and that the Town acted in "good faith."  The district court also found the Stevens Parties were unharmed, particularly given the fact that they had notice the Town intended to install sheet piling.  The Stevens Parties did not appeal.

[¶20] On August 27, 2012, the Stevens Parties sought a mandatory injunction and order of default.  Once again, the Stevens Parties alleged the Town failed to properly reconstruct the alleyway.  Prior to the district court hearing the matter, the parties informed the court they had settled the issues raised therein.  As a result, the district court vacated the hearing. However, the parties apparently never signed a written settlement agreement.

[¶21]  On March 21, 2013, the Stevens Parties filed a motion to enforce the settlement agreement allegedly reached in response to the Stevens Parties' August 27, 2012, motion for mandatory injunction and order of default.  The Town responded and asserted the Stevens Parties were misrepresenting the verbal settlement agreement reached by the parties.

[¶22]  The district court set a hearing on the motion and ordered the parties to submit evidence and arguments in advance of the hearing "in the form of proffers."  After reviewing the written evidence and arguments, and hearing oral argument on the matter on May 8, 2013, the district court entered its Order Enforcing Settlement Agreement, where it stated:

> Here, the parties agree that they engaged in negotiations and reached a settlement agreement. … Additionally, on January 4, 2013, counsel for the parties informed the [c]ourt that they had reached a settlement agreement.  Consequently, the [c]ourt finds that the parties intended to and did enter into an oral settlement agreement.

The primary question currently before the [c]ourt concerns the parties' disagreement over a few limited terms of that settlement. Specifically, in the Town's *Response to Defendants' Motion to Enforce Settlement Agreement,* it argues that it never agreed to:

(a) Segregate the topsoil from the fill dirt,
(b) Remove the existing sheet piling retaining wall, and
(c) Survey the lots.

The district court then found:

The only reasonable interpretation of this agreement is that set forth by the Town. The issue of the retaining wall already has been litigated by the parties and decided by this [c]ourt. Chuck Bartlett (Town Engineer) initially proposed a rock gabion wall as part of the Town's plans for the alleyway reconstruction. The parties agreed to the rock gabion in the earlier *Consent Decree.* However, the Town deviated from that plan and installed the shee[t] piling wall instead of the rock gabion. Consequently, [Mr. Stevens] complained to the [c]ourt of the Town's unilateral decision to deviate from the original plan. The [c]ourt held the deviation to be a violation of the *Consent Decree,* but found the variation to be *de minimis* [sic] and reasonable. … Thus, the shee[t] piling retaining wall was approved *ex post facto* and permitted to remain.

[Mr. Stevens'] current assertion that the Town has subsequently agreed to remove the shee[t] piling wall and replace it with a rock gabion retaining wall is simply unreasonable. With the history of this retaining wall in mind, it is not reasonable to believe that the Town agreed to replace the retaining wall after it had paid Reiman Corporation to install the shee[t] piling wall and after the matter was fully litigated. Further, the [c]ourt will not re-litigate the matter of the retaining wall now."

The Stevens Parties did not appeal.

### July 2013-October 2019

[¶23] On July 9, 2013, the Stevens Trust and Quality Landscape each filed a civil complaint against the Town. The primary issues they raised concerned the manner in

which the Town constructed the sheet piling wall, reconstruction of the alleyway, the Town's allegedly improper removal of topsoil from the Stevens Property without compensation, and stormwater discharge onto the Stevens Property as a result of the Town's activities. The Stevens Parties asserted claims for trespass, nuisance, negligence, inverse condemnation, taking, and breach of an implied contract to install utilities, allegedly promised in 2010 to induce agreement to the Consent Decree. The district court consolidated the complaints with the 2009 case described above, stating "the cases involve the same parties, facts, and questions of law…."

[¶24] The consolidated cases proceeded slowly after 2013. Eventually, the parties sought summary judgment, and the district court held a hearing on March 15, 2017. On March 22, 2017, the district court entered summary judgment in favor of the Town on the Stevens Parties' tort claims of trespass, conversion, nuisance, and negligence. The district court also dismissed their breach of implied contract claims, finding the plain language of the Consent Decree voided "any oral agreement allegedly made at the 2010 mediation" to "vacate the alleyway adjacent to [the Stevens] Property, [and] to install utility services within the vacated alleyway that would serve [the Stevens] land]…." The district court then denied summary judgment to the Town on the takings and inverse condemnation claims because genuine issues of material fact remained regarding reconstruction of the alleyway, whether the Town took soil from the Stevens Property for the Town's use without compensation, whether the Town removed the electrical source for the Stevens Property and diminished its value, and whether the Town refused to install water and sewer. The Stevens Parties never appealed the summary judgment order.

[¶25] On May 8, 2019, the district court held a bench trial. On October 31, 2019, the court issued its Findings of Fact, Conclusions of Law and Order. The district court found the Town did not have authority to approve or install electric, water, or sewer utilities to the Stevens Property, and that the Consent Decree did not address installation of water or sewer utilities to the property. Further, the district court found the sheet piling wall precluded the installation of any buried utilities in the alleyway. However, the court recognized the sheet piling wall failed to mitigate erosion and runoff onto the Stevens Property, and under the Consent Decree the Town was to "maintain and stabilize the slopes and grades of the alleyway" to control storm water discharge and minimize erosion.

[¶26] The district court then held that the Town had "taken possession of and damaged portions of the subject property. [The Stevens Parties are] entitled to damages for a partial taking upon proof of the same." However, the court found the Stevens Parties failed to prove any damages. As a result, the district court entered judgment in favor of the Town. The Stevens Parties did not appeal.

***Current Action***

7

[¶27]  On November 9, 2023, the Stevens Parties filed a motion seeking two remedies:  (1) an order to show cause as to why the Town failed to comply with the Consent Decree, the district court's 2013 Order Enforcing Settlement Agreement, and the district court's 2019 Findings of Fact, Conclusions of Law and Order; and (2) a writ of mandamus.  For ease of reference, we refer to the motion as the 2023 Motion to Show Cause and for Mandamus.  In support of the motion, the Stevens Parties alleged:

- The Town failed to reconstruct the alleyway adjacent to the Stevens property, including construction and/or installation of a rock and gabion slope stabilization structure along the entirety of the border between the Town's property and the Stevens Property, all of which has resulted in erosion on the Stevens Property.[2]
- The Town failed to authorize and/or facilitate installation of water, sewer, and electrical service to the Stevens Property.
- The Town failed to allow access to the Stevens Property from River Street.
- The Town failed to authorize the Stevens Parties to remove the northside retaining wall.

[¶28]  The Town responded to the Stevens Parties' 2023 Motion to Show Cause and for Mandamus arguing the requested relief was improper and seeking dismissal.

[¶29]  On April 11, 2024, and after hearing argument from the parties, the district court entered its Order on Motion to Dismiss.  In its order, the district court found all of the Stevens Parties' claims were barred by res judicata.  The court held "[i]t would be inequitable to allow [Mr. Stevens] to continue to relitigate issues that were disposed of in the Consent Decree or previously raised, could have been raised, or resolved by prior litigation with the same parties."  The request for mandamus was similarly disposed of:

> The request for mandamus in this motion appears to be an attempt at an alternative to circumvent the fact that [Mr. Stevens] voluntarily entered into the *Consent Decree*, which was dispositive of the original mandamus request.  Further, [the Stevens Parties have] not appealed the 2019 Order where the [c]ourt found that approval and installation of utilities was outside of the Town's authority.

Also regarding mandamus, the court "definitively determined that the Town does not have the ministerial jurisdiction [required for mandamus] over water, sewer, and electric service

---

[2] At oral argument the parties clarified that the only wall the Town ever erected was the sheet piling wall across approximately 25 percent of the border between the Town's property and the Stevens Property.

8

to the subject property." Finally, the district court held the Stevens Parties' claims were barred by the contractual limitations period in the Consent Decree.

[¶30] The Stevens Parties' appeal followed.

## STANDARD OF REVIEW

[¶31] The district court resolved the Stevens Parties' 2023 Motion to Show Cause and for Mandamus by considering the Town's response as seeking dismissal of a complaint. In ruling on a motion to dismiss, we must accept as true all of the facts alleged in the complaint and examine those facts in the light most favorable to the plaintiff. *Vance v. Wyomed Laboratory, Inc.,* 2016 WY 61, ¶ 8, 375 P.3d 746, 748 (Wyo. 2016) (citing *Feltner v. Casey Family Program*, 902 P.2d 206, 207 (Wyo. 1995)). A motion to dismiss "is the proper method for testing the legal sufficiency of the allegations and will be sustained when the complaint shows on its face that the plaintiff is not entitled to relief." *Id.* (quoting *Feltner,* 902 P.2d at 208) (quotation omitted). In addition, a court may consider documents a party refers to in a complaint when they are central to the claims and there is no dispute as to authenticity.[3] *Peterson v. Laramie City Council*, 2024 WY 23, ¶ 17, 543 P.3d 922, 929 (Wyo. 2024) (citations omitted).

[¶32] The determination of whether res judicata applies is a question of law that we review de novo. *Taulo-Miller v. Hognason,* 2022 WY 8, ¶ 16, 501 P.3d 1274, 1280 (Wyo. 2022).

[¶33] We also review de novo whether a ministerial duty exists which might permit the issuance of a writ of mandamus, which is a question of law. *Carson v. Albany County School District #1 Board of Trustees,* 2024 WY 11, ¶ 10, 542 P.3d 184, 187 (Wyo. 2024). However, whether or not to issue a writ of mandamus is left to the sound judicial discretion of the district court. *Williams v. Sundstrom,* 2016 WY 122, ¶ 17, 385 P.3d 789, 793 (Wyo. 2025) (citing *State ex rel. Arnold v. Ommen,* 2009 WY 24, ¶ 14, 201 P.3d 1127, 1132 (Wyo. 2009)). An abuse of discretion occurs when the district court could not reasonably conclude as it did. *In re Bd. of County Comm'rs, Sublette County,* 2001 WY 91, ¶ 10, 33 P.3d 107, 112 (Wyo. 2001).

## DISCUSSION

[¶34] The Stevens Parties argue the district court erred when it determined the claims in their 2023 Motion to Show Cause and for Mandamus were barred by res judicata. They also claim the district court erred in concluding mandamus relief was not available, and when it determined any claims addressed in the Consent Decree were barred by its

---

[3] The Stevens Parties referenced various prior orders in their motion and there is no dispute as to the authenticity of any of them.

contractual limitations provision. Finally, the Stevens Parties argue the Town is judicially estopped from asserting the 2013 Order Enforcing Settlement Agreement excuses the Town from reconstructing the alleyway. We first turn to res judicata.

### *Res Judicata*

[¶35] Res judicata, also known as claim preclusion, bars litigation of issues that were or could have been determined in a prior proceeding. *Tozzi v. Moffett,* 2018 WY 133, ¶ 16, 430 P.3d 754, 759 (Wyo. 2018). The purpose of res judicata is to protect parties from the expense and frustration of attending to multiple lawsuits, while also conserving judicial resources and fostering reliance on judicial action by minimizing the possibility of inconsistent decisions. *Id.* (citing *Worman v. Carver,* 2002 WY 59, ¶ 13, 44 P.3d 82, 86 (Wyo. 2002) (quotation omitted)).

[¶36] We have expressly stated that res judicata has "the effect of foreclosing any litigation of matters that never have been litigated because of a determination that they should have been advanced in an earlier suit." *Cermak v. Great West Cas. Co.,* 2 P.3d 1047, 1053 (Wyo. 2000). A full and fair *opportunity* to litigate an issue is all that is required for the doctrine to apply. *Bender v. Uinta County Assessor,* 14 P.3d 906, 910 (Wyo. 2000).

[¶37] The following four factors determine whether res judicata applies: "(1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them." *Tozzi,* ¶ 16, 430 P.3d at 760 (quoting *Slavens v. Bd. of County Comm'rs for Uinta County,* 854 P.2d 683, 686 (Wyo. 1993) (citation omitted)).[4]

[¶38] There is no question the parties, the subject matter, and the capacities of the persons in the Stevens Parties' 2023 Motion to Show Cause and for Mandamus are identical to those in the prior proceedings. In fact, the motion was filed using the 2009 case number, which by 2023 was consolidated with the 2013 cases. Therefore, our only consideration is the third factor — whether the issues raised are the same and related to the same subject matter. *Id.*

---

[4] The Stevens Parties assert the law of the case doctrine applies to this case, perhaps because their 2023 Motion to Show Cause and for Mandamus was filed under the 2009 case number as opposed to as a new complaint. The law of the case doctrine is related to res judicata and stands for the proposition that a court's decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation. *Lyden ex rel. Lyden v. Winer,* 913 P.2d 451, 454 (Wyo.1996). Usually, the law of the case doctrine requires a district court to adhere to its prior rulings, the rulings of an appellate court, or the rulings of another judge in the same case or a closely related case. *Id.* Under the unique circumstances of this case, and because the 2019 bench trial resolved all outstanding issues from the 2009 and 2013 cases and resulted in a final judgment, we will apply the doctrine of res judicata, regardless of the fact that the Stevens Parties sought relief by styling their filing as a motion as opposed to a new complaint.

[¶39] The Stevens Parties assert they are not attempting to relitigate issues the district court already decided. They allege they are instead, "seeking to have the District Court enforce its own orders and direct [the Town] to take action on such orders." We disagree, and conclude the claims are barred by res judicata. The Stevens Parties' claims in the 2023 Motion to Show Cause and for Mandamus already were or could have been raised previously.

[¶40] In its Order on Motion to Dismiss, the district court listed the subject matter and issues presented in the Stevens Parties' 2023 Motion to Show Cause and for Mandamus that were or could have been previously raised: a) reconstruction of the alleyway, and issues surrounding it, including construction of a wall and erosion from stormwater drainage; b) whether the Town must supply water, sewer, and electric services; c) access to the subject property from River Street; and d) the north retaining wall. We address each of these in turn.

## A. *Reconstruction of the Alleyway, including the Wall, and Erosion Control*

[¶41] The Stevens Parties admit "the district court has ruled on the alleyway reconstruction issue." Despite this acknowledgement, in their 2023 Motion to Show Cause and for Mandamus, they asked the district court to "require[e] [the Town] to comply and complete reconstruction of the entirety of the alleyway and attendant slopes and grades."

[¶42] The Stevens Parties have raised this issue at least four times: 1) in their 2009 counterclaims; 2) in their motion for an order of default, sanctions and damages filed September 28, 2011, and as amended; 3) in their motion to enforce settlement agreement filed March 21, 2013; and 4) in their July 9, 2013, civil complaints. In each of those instances, the Stevens Parties alleged the Town failed to reconstruct the alleyway.

[¶43] Moreover, the district court ruled on the issue in three orders, including in a final order after the 2019 bench trial. First, in its January 2012 Order, the court found the Town was in default of its obligations in the Consent Decree regarding the Town's failure to conform to their own proposed grades and contours. However, and despite the finding of default, the court found the new sheet piling wall, along with its new grades in contours, was a reasonable alternative.

[¶44] Second, in its 2013 Order Enforcing Settlement Agreement, the district court again addressed the issue of the sheet piling wall in the alleyway, finding it was "not reasonable to believe the Town agreed to replace the sheet piling wall [after it was installed] and after the matter was fully litigated. [The court] will not re-litigate the matter of the retaining wall now." Because the Stevens Parties were asking for specific performance in relation to the remainder of the wall, the court ordered the Town to, within 140 days of its order,

11

"complete reconstruction of the alleyway adjacent to Lots One (1) through Ten (10) … as modified by the now-approved sheet piling retaining wall. The Town shall in good faith use its best efforts to complete reconstruction of the alleyway prior to the … deadline." However, between 2013 and 2019, the reconstruction was not completed.

[¶45] Finally, the matter of the alleyway, wall, and erosion from stormwater came to a head in 2019 and went to trial, after which the district court declared the Town had "taken possession of and damaged portions of the subject property" in relation to the alleyway. The court found that, "despite [the Town] acting in good faith in its construction of the sheet piling wall, the sheet piling wall has failed to mitigate erosion and water runoff both south of and onto the subject property, resulting in a separation of the wall from the soil on the south side of the sheet piling wall." However, the court found the Stevens Parties failed to prove damages. The court then entered judgment for the Town. Importantly, the Stevens Parties did not seek an order from the district court to compel the Town to complete construction of the sheet piling retaining wall, as set forth in the 2013 Order Enforcing Settlement Agreement. The Stevens Parties also did not appeal that final judgment in 2019.

[¶46] In short, the issues of reconstruction of the alleyway, attendant slopes and grades, the retaining wall, and erosion from stormwater related to construction of the alleyway were before the district court and litigated in 2019. To the extent that the Stevens Parties claim any of their issues now were not raised prior to or at the 2019 trial, they could have been. It was therefore proper for the district court to find the Stevens Parties were barred by res judicata when they raised them in the 2023 Motion to Show Cause and for Mandamus. *Tozzi,* ¶ 16, 430 P.3d at 759. To conclude otherwise would frustrate the judicial process and perpetuate seemingly endless litigation.

### B.   *Water, Sewer, and Electrical Utilities*

[¶47] The Stevens Parties' 2023 Motion to Show Cause and for Mandamus also requested the district court find the Town in contempt for "refusing to permit water … sewer … [and] electric service" to the property, and to issue a writ of mandamus for the Town to "perform those actions for which they are in contempt." On appeal, the Stevens Parties argue the Town will not authorize, install, or facilitate the installation of these utilities.

[¶48] However, these issues were also already litigated by the parties before the district court, culminating in the 2019 judgment that the Stevens Parties did not appeal. Specifically, the Stevens Trust raised these issues in its 2013 Complaint:

> 81. The Town represented to [the Stevens Trust] in June 2010 that in exchange for [ ] agreeing to replace that Stipulated Settlement Agreement between the Town and [Mr. Stevens], dated August 19, 2009 with the Consent Decree, the Town would vacate the alleyway, *install utility services within the*

12

> *vacated alleyway that would serve [Mr. Stevens'] Property* and re-plat the alleyway in a manner that would result in [Mr. Stevens] owning that real property defined as the north one-half of the alleyway.

(emphasis added). The district court addressed this issue in its 2017 summary judgment order where it recognized these alleged promises were not in the Consent Decree. The court took notice of the integration clause in the Consent Decree that superseded and rendered invalid any earlier promises, and then entered summary judgment in favor of the Town on the Stevens Parties' breach of implied contract claims.

[¶49] Despite the district court's summary judgment ruling, the Stevens Parties again raised the issue of installation of utilities in their pretrial memorandum filed January 30, 2018, where they asserted that the Town failed to comply with the Consent Decree by "obstruct[ing] or prevent[ing] the installation of utility services to the subject property (gas, water, and electric)." Yet again, the district court addressed the issue and found the Town did not have "authority to approve or install electrical," nor did it have "authority to approve or install water and sewer utilities only in the alleyway." Because the Stevens Parties did not appeal the 2019 judgment in favor of the Town, they were barred by res judicata from raising the issues in 2023.

## C.    *Access to the Property from River Street*

[¶50] The district court also barred the Stevens Parties' claim regarding access to the property from River Street because "[i]t would be inequitable to allow [Mr. Stevens] to continue to relitigate issues that were disposed of in the Consent Decree or previously raised, could have been raised, or resolved by prior litigation with the same parties." The 2010 Consent Decree addressed access to the property from River Street:

> [Mr. Stevens] shall make application with the Town for an excavation permit for the construction of the access/driveway from River Street to subject property in accordance with [the Town Municipal Code] and comply with all requirements of the permitting process. The Town shall issue such permit within ten (10) business days. Landowner shall comply with any other existing state laws regarding access to the subject property.

[¶51] To the extent Mr. Stevens seeks to litigate the alleged absence of access now, the claim is barred by res judicata because it could have been determined in the proceedings leading up to or at the 2019 bench trial.[5] *Tozzi,* ¶ 16, 430 P.3d at 759.

---

[5] Mr. Stevens now has access to the Stevens Property from the west via Highway 130.

13

[¶52]  Even if res judicata did not apply, the issue of access via River Street is also barred by the Consent Decree.  Access was specifically addressed in the Consent Decree, meaning its one-year limitations provision applies.  *See Nuhome Invs., LLC v. Weller,* 2003 WY 171, ¶¶ 8-9, 81 P.3d 940, 944-45 (Wyo. 2003) (recognizing parties' right to contract and upholding a negotiated shorter limitations period within a contract).  As a result, any claim the Stevens Parties wished to raise regarding the failure of the Town to provide access via River Street is now time barred.

### D.  *Removal of North Retaining Wall*

[¶53]  Finally, the Stevens Parties claim the Town will not authorize the removal of the retaining wall on the north side of his property.  In 2008, Mr. Stevens built the wall "without a building permit or digging permit" and the Town issued a cease-and-desist order.  When the parties entered their 2009 Stipulated Settlement Agreement, Mr. Stevens agreed to remove the north retaining wall, or "the Town will proceed with removal."

[¶54]  Again, res judicata precludes issues that could have been raised previously.  *Tozzi,* ¶ 16, 430 P.3d at 759.  The Stevens Parties' ability to remove the retaining wall was an issue more than fifteen years ago and was part of the parties' 2009 Stipulated Settlement Agreement.  The Stevens Parties identify no new facts or circumstances to demonstrate they could not have raised issues related to the retaining wall in the proceedings leading up to or in the 2019 bench trial.

### *Writ of Mandamus*

[¶55]  The Stevens Parties next argue the district court's conclusion that mandamus is not an appropriate remedy in this case was incorrect.  We disagree.

[¶56]  "Mandamus is a writ issued in the name of the state to an inferior tribunal, a corporation, board or person commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station."  Wyo. Stat. Ann. § 1-30-101 (2023).  This Court has explained mandamus:

> The function of mandamus is to command performance of a ministerial duty which is plainly defined and required by law.  Mandamus will not lie unless the duty is absolute, clear, and indisputable.  The law must not only authorize the demanded action but require it.  If the lower tribunal has the right to exercise discretion regarding an issue, mandamus is not an appropriate remedy.

14

*Carson,* ¶ 9, 542 P.3d at 187 (quoting *State ex rel. West Park Hosp. Dist. v. Skoric,* 2014 WY 41, ¶ 22, 321 P.3d 334, 342 (Wyo. 2014)) (other quotation omitted). An official's duty is ministerial "when it is absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Id.*, ¶ 12 (internal quotations omitted).

[¶57] The Stevens Parties requested the district court issue a Writ of Mandamus to the Town related to all of the issues we have already discussed. Specifically, the request sought a writ compelling the Town to: a) immediately install and construct the rock and gabion slope stabilization structure in the alleyway; b) authorize and facilitate the installation of water service; c) issue the requisite permission and/or authority for installation of sewer service; d) authorize installation of electrical service; e) issue an access permit for legal access to the Stevens Property from River Street; and f) minimize stormwater drainage and erosion.

[¶58] The district court found, "the request for mandamus in this motion appears to be an attempt at an alternative to circumvent the fact that [the Stevens Parties] voluntarily entered into the *Consent Decree,* which was dispositive of the original mandamus request." The court also held that mandamus could not otherwise issue because the Stevens Parties failed to state ministerial duties related to their request. We agree with the district court.

[¶59] First, we note the Stevens Parties did not properly request a writ of mandamus. As explained above, the request for mandamus was presented as part of a motion to the district court; no affidavit was included. However, an application for a writ of mandamus "must be by petition, in the name of the state, on the relation of the party applying and verifying by affidavit." Wyo. Stat. Ann. § 1-30-103 (2023). Though it did not, the district court could have disposed of the mandamus request on purely procedural grounds. *See Williams v. Sundstrom,* 2016 WY 122, ¶¶ 13-14, 385 P.3d 789, 792 (recognizing that, although it did not, a district court could have dismissed a proposed mandamus action because petitioner failed to follow formal pleading requirements).

[¶60] Substantively, and even if the Stevens Parties had properly petitioned the district court for a writ of mandamus, the district court was correct that the Stevens Parties were not requesting the Town complete ministerial duties such that § 1-30-103 could be properly invoked. The Stevens Parties' 2023 Motion to Show Cause and for Mandamus includes no citation to any relevant statutory, regulatory, or other legal authority demonstrating the Town had a ministerial duty to act.

[¶61] Construction of a retaining wall, undertaking erosion mitigation measures, authorizing the removal of a retaining wall, and providing access to private property from a public roadway are clearly not ministerial duties. As for water, sewer, and electrical service, the Stevens Parties failed to provide the district court with any plainly defined, legally required ministerial duties that are "absolute, certain and imperative, involving

15

merely execution of a specific duty arising from fixed and designated facts." *Carson*, ¶¶ 9, 12, 542 P.3d at 187. For these reasons, the district court properly denied the request for mandamus.

[¶62] For the first time on appeal, the Stevens Parties cite to several ordinances in the Saratoga Municipal Code related to the request for action related to utilities. However, we generally do not consider arguments raised for the first time on appeal unless they are jurisdictional or of such a fundamental nature as to require our consideration. *Rafter J. Ranch Homeowner's Assoc. v. Stage Stop, Inc.*, 2024 WY 114, ¶ 42, 558 P.3d 562, 574 (Wyo. 2024) (citations omitted). We follow this rule because "'it is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court.'" *Crofts v. State ex rel. Dept. of Game and Fish*, 2016 WY 4, ¶ 19, 367 P.3d 619, 624 (Wyo. 2016) (quoting *Basic Energy Servs., L.P. v. Petroleum Res. Mgmt., Corp.*, 2015 WY 22, ¶ 28, 343 P.3d 783, 791 (Wyo. 2015)). As the new arguments the Stevens Parties raise on appeal are neither jurisdictional nor of such a fundamental nature as to require our review, we decline to consider them for the first time on appeal.[6]

[¶63] Although we find the Stevens Parties' claims are barred by res judicata, to the extent that they are separately requesting mandamus, that relief is unavailable to them as well. The district court did not abuse its discretion in denying the writ of mandamus or err in its conclusion that none of what the Stevens Parties requested was ministerial.

### *Judicial Estoppel – Alleyway*

[¶64] Finally, the Stevens Parties assert the Town should be judicially estoped from arguing the 2013 Order Enforcing Settlement Agreement excuses it from reconstructing the remainder of the alleyway when historically it argued to the district court that the rock and gabion basket retaining wall was appropriate.

[¶65] As we have stated, judicial estoppel:

> … is sometimes referred to as a doctrine which estops a party to play fast and loose with the courts or to trifle with judicial proceedings. It is an expression of the maxim that one cannot blow hot and cold in the same breath. A party will just

---

[6] Even if we were to consider the argument, the Stevens Parties' briefing indicates these are either discretionary duties or not duties of the Town at all. As to water service, the Stevens Parties assert it is the Town's responsibility to construct and install the service, including *determining* location and placement. The Stevens Parties similarly argue the *placement* of sewer service is up to the Town, and that the Town has failed to install it or *provide alternatives or direction* as to placement. Finally, the Stevens Parties admit installation of electrical service is not the responsibility of the Town.

not be allowed to maintain inconsistent positions in judicial proceedings[.]

*Wilson v. Lucerne Canal & Power Co.,* 2007 WY 10, ¶ 26, 150 P.3d 653, 663 (Wyo. 2007) (quotation omitted)). The doctrine of judicial estoppel is narrow and applies only to changing positions as to facts. *Rafter J. Ranch Homeowner's Assoc.,* ¶ 45, 558 P.3d at 575 (citing *Baker v. Speaks,* 2013 WY 24, ¶ 60, 295 P.3d 847, 861 (Wyo. 2013) (citations omitted)). "Inconsistent claims and legal conclusions do not implicate judicial estoppel." *Id.*

[¶66] Here, the Stevens Parties' claim of judicial estoppel relates to allegedly inconsistent claims or legal theories. The Stevens Parties acknowledge as much in their appellate brief, where they argue "the [Town] *argues the exact opposite position* which it had historically argued to the District Court . . .." (emphasis added). Moreover, the Stevens Parties neglect to recognize that their issues about reconstruction of the alleyway were adjudicated and resolved after the 2019 bench trial, and the Town's arguments in the current action relate to res judicata. Because the Stevens Parties did not appeal the 2019 judgment in favor of the Town, they cannot do so now.

[¶67] Two other points are noteworthy. First, it appears to the Court that the Town has maintained its position in a consistent manner – it has defended against the Stevens Parties' repeated claims that it violated the Consent Decree when it did not reconstruct the alleyway in a manner satisfactory to Mr. Stevens. Second, the Stevens Parties' claim that the Town is taking inconsistent positions is somewhat troublesome in light of their admission at oral argument that the rock and gabion basket retaining wall that they continue to demand is not the "right solution" to their issues with the alleyway and would instead cause "long-term" problems.

## CONCLUSION

[¶68] The district court correctly concluded the claims raised in the Stevens Parties' 2023 Motion to Show Cause and for Mandamus are barred by the doctrine of res judicata. In addition, the court did not err or abuse its discretion related to the request for mandamus. Finally, judicial estoppel does not apply under the facts of this case.

[¶69] Affirmed.